SEWELL *v.* DETROIT ELECTRICAL
CONTRACTORS ASSOCIATION:

1. PLEADING—MOTION TO DISMISS—MATERIAL FACTS CONCEDED TRUE.
   The material facts alleged in a declaration must be conceded as
   true in determining whether a motion to dismiss should be
   granted.

2. CONSPIRACY—DAMAGES—WRONGFUL ACTS.
   The gist or gravamen of a civil action for damages resulting
   from wrongful acts alleged to have been committed in pur-
   suance of a conspiracy is not the conspiracy but the wrongful
   acts causing the damages.

3. APPEAL AND ERROR—DISMISSAL OF APPEAL.
   The effect of the dismissal of an appeal is to leave the parties
   where they were before the appellate proceedings were in-
   stituted.

4. JUDGMENT—DETERMINATION BY CITY CIVIL SERVICE COMMISSION—
   DISCHARGE OF EMPLOYEE—DAMAGES.
   The dismissal of plaintiff's second application for leave to ap-
   peal in the nature of certiorari by the circuit judge by reason
   of plaintiff's failure to furnish to the trial court the transcript
   of the rehearing held by the city civil service commission left
   the decision of the commission on the hearing and rehearing
   in full force and effect and constituted a final adjudication
   that he had been lawfully discharged from employment by
   the city as an electrical inspector foreclosing any claim for
   damages, growing out of such discharge, against members
   of the department who participated in effecting the discharge.

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading § 332.
[2] 11 Am Jur, Conspiracy § 45.
[3, 4] 3 Am Jur, Appeal and Error § 758.
[5–7] 31 Am Jur, Labor § 123.
[7] 31 Am Jur, Labor §§ 68–73.
[8] 11 Am Jur, Conspiracy § 55.

5. LABOR RELATIONS—EQUITY INTERFERENCE.

It is not the business of an equity court to assure union members that their union affairs shall be conducted in a thoroughly democratic manner, especially where intra-union appeal procedure has not been used to review action taken.

6. SAME—COURTS—INTRA-UNION REMEDIES.

A member of a labor union whose constitution and bylaws provide a reasonable and valid mode for determining when relief shall be given or denied to members by tribunals within the union may not seek redress in the courts until such intra-union remedies have been exhausted.

7. SAME — EXPULSION FROM UNION — INTRA-UNION REMEDIES — DAMAGES.

Plaintiff member of a union of electrical workers who failed to appeal his expulsion to the international union's vice-president, as provided for by the union constitution and who makes no claim that such an appeal would be futile, has failed to exhaust his intra-union remedies and is precluded from claiming damages against the union and its officers as a result of such expulsion.

8. CONSPIRACY—PLEADING—RES JUDICATA.

Declaration alleging conspiracy failed to state a cause of action, where wrongful acts asserted have already been adjudicated adversely to him.

Appeal from Wayne; Jayne (Ira W.), J. Submitted January 5, 1956. (Docket No. 33, Calendar No. 46,414.) Decided April 2, 1956.

Case by Walter J. Sewell against Detroit Electrical Contractors Association, a Michigan corporation, Carl J. Schoeninger, International Brotherhood of Electrical Workers, Local 58 of International Brotherhood of Electrical Workers, voluntary associations, Francis C. Riley, Kenneth Steiner and Joseph P. Wolff for slander and conspiracy leading to his wrongful discharge as city inspector. Cause dismissed on motions of various defendants. Plaintiff appeals. Affirmed.

*Davidow & Davidow (Larry S. Davidow,* of counsel), for plaintiff.

*Crawford, Sweeney, Dodd & Kerr (A. Stewart Kerr* and *Robert G. Russell,* of counsel), for defendants Detroit Electrical Contractors Association and Schoeninger.

*Edward N. Barnard,* for defendants International Brotherhood of Electrical Workers, Local 58 of International Brotherhood of Electrical Workers and Riley.

*Paul T. Dwyer,* Detroit Corporation Counsel, *Andrew DiMaggio, Frank J. Wendt* and *Julius C. Pliskow,* Assistants Corporation Counsel, for defendants Steiner and Wolff.

SHARPE, J.   Plaintiff, Walter J. Sewell, a resident of the city of Detroit, on October 8, 1952, filed his declaration in a plea of trespass on the case against the above-named defendants for damages caused by his being unlawfully discharged from his position with the department of buildings & safety engineering in the city of Detroit, and for causing his expulsion from the union.   The original declaration was amended several times, the last date being September 30, 1953.   The composite declaration alleges, in part:

"2.  That defendant Detroit Electrical Contractors Association is a Michigan nonprofit corporation, a trade association composed of numerous electrical contracting firms engaged in business in the city of Detroit.

"That defendant Carl J. Schoeninger is and for a long period of time had been secretary-manager of defendant Detroit Electrical Contractors Association, and is a resident of the county of Wayne, State of Michigan.

"That defendant International Brotherhood of Electrical Workers is a voluntary association composed of local unions made up of members who are electricians and/or electrical workers, and has an office in the city of Detroit, county of Wayne, State of Michigan. * * *

"That defendant Francis C. Riley is a resident of the county of Wayne, State of Michigan, and is business agent for defendant Local 58.

"That defendant Kenneth Steiner is associated with the department of buildings & safety engineering of the city of Detroit and is a resident of the county of Wayne, State of Michigan. * * *

"4. Plaintiff further says that he became an employee of the department of buildings & safety engineering of the city of Detroit in 1926, and was continuously from that time on, an employee of said department until November 8, 1949, except for a 5-year period during the depression years and a period of 3 years during World War II when he was an employee of the Federal government as an electrical inspector.

"5. Plaintiff further says that for many years prior to November 8, 1949, he was a member of defendant Local 58; that up to and including November 8, 1949, he had enjoyed all the benefits of membership in said defendant Local 58 and defendant International Union and had been entitled to and did work at his occupation as an electrician. * * *

"8. Plaintiff further says that in the pursuance of his duty as an electrical inspector employed by the department of buildings & safety engineering of the city of Detroit, and as a loyal and faithful servant of the city of Detroit, he checked up on various members of the Detroit Electrical Contractors Association and their failure to pay the fees due to the city of Detroit, and that as a result of his activity in that regard, he found himself transferred from the work he was doing to other work where he would not be in a position, as the defendants believed, to inter-

fere in their practices which they had theretofore employed. * * *

"10. Plaintiff further says that in September, 1949, following the primary election for city offices in the city of Detroit, plaintiff wrote a letter to the editor of the Detroit News, which was published, reference to which is hereby made as if specifically herein set forth; in which said letter he commented upon the defeat of the then mayor in his failure to be renominated and in which he called attention to the association between the then mayor and defendants Schoeninger and Riley and certain members of the department of buildings & safety engineering of the city of Detroit.

"11. Plaintiff further says that he is informed and believes it to be true and charges the fact to be that defendants Carl J. Schoeninger, Detroit Electrical Contractors Association, Francis C. Riley, Kenneth Steiner and Joseph P. Wolff had come to the conclusion that plaintiff was a thorn in their sides and should be removed from his job; that these defendants had begun to consider the necessity of removing plaintiff from his position following the publication of the letter above referred to in the Detroit News in September, 1949, and that they merely waited until after the municipal election in November, 1949, to consummate the determination to remove the plaintiff previously arrived at.

"Plaintiff further says that in the early part of November, 1949, following the city election, defendants Schoeninger, Detroit Electrical Contractors Association, Steiner, Wolff and Riley, did cause false accusations and charges to be made against the plaintiff with the department of buildings & safety engineering, which false charges and accusations were prepared and presented by these defendants jointly and severally for the sole purpose of creating a fictitious basis for removing plaintiff from his position as an electrical inspector; that defendants above described, knowing full well that the plaintiff had performed his work in a proper and efficient man-

ner, made the said false charges although they were fully aware of and knew the falsity thereof, and that ultimately the false charges were reduced to the following:

"1. Failure to obey lawful and reasonable direction given by superior officers (insubordination).

"2. Irresponsible reporting of inspections.

"3. Conduct on inspectional work unbecoming to a departmental employee and the resulting discredit reflected on the department in general therefrom.

"4. Unsatisfactory public contacts with citizens and electrical contractors in connection with work assignment.

"5. And, in addition, 'for the good of the service.'

"That the above charges were presented on a form issued by the city of Detroit department of buildings & safety engineering, entitled 'Notice of Discharge,' bearing date of November 8, 1949, signed by defendant Joseph P. Wolff, addressed to the plaintiff and delivered to the plaintiff by one Luddy who was and is an employee of the department of buildings & safety engineering.

"That originally, as plaintiff is informed and believes to be true and charges the fact to be, only 4 general allegations were made, none of which was supported at the first civil service hearing, and then subsequently a fifth charge was added as above described in subparagraph 5 of the charges, although at no time was any charge in writing made against plaintiff setting forth the alleged details; that subsequently defendant Joseph P. Wolff admitted that he had no personal knowledge of the alleged charges although he did issue the order of discharge.  *  *  *

"13. Plaintiff further says that as a result of these untrue and false accusations caused to be placed against him by the said defendants, said plaintiff was discharged from his position as an electrical inspector in the department of buildings & safety engineering, and that thereafter said defendants, jointly and severally, did promulgate, with defendant unions, a set of untrue charges against plaintiff,

which charges were used by them jointly and severally, knowingly and deliberately, for the purpose of having plaintiff expelled from defendant unions, knowing full well that such expulsion would make it impossible for the plaintiff to secure work as an electrician or electrical work in the metropolitan area of Detroit or anywhere else wherever the closed shop prevailed; that it is a well-known fact that the closed-shop condition exists in almost all sections of the country where electrical contracts are in operation, and that the expulsion of plaintiff from defendant unions would virtually deny to plaintiff his right to work as a general electrician; that the untrue charges made against the plaintiff hereinabove referred to were fully set forth in communications sent by the defendants to defendant local union, copies of which were sent to the plaintiff, and copies of which are attached to and made a part of plaintiff's amendment to declaration heretofore filed in this cause, marked exhibits A and B respectively; that the defendants knew full well that the statements made by the plaintiff were true but because of their (the defendants') control of the union machinery, they, the defendants, made use of the aforesaid statements for the purpose of improperly and unlawfully expelling the plaintiff from the union, and that this action of defendant unions and union officials was in violation of the so-called Taft-Hartley amendment to the labor relations act.*

"14. Plaintiff further says that the said defendants, with full knowledge of the facts and circumstances, yet in reckless disregard of the consequences, did jointly and severally proceed with their unlawful conduct in placing the false and untrue charges against said plaintiff, as a result of which, proceedings were instituted to have plaintiff expelled from said union and plaintiff was so expelled on the 24th day of January, 1950.

"15. Plaintiff further says that he has sought to

---

* See 29 USCA, § 141 *et seq.*—REPORTER.

have defendant International Union, through its president, intervene and take action to undo the wrong perpetrated upon him by the defendants as hereinabove set forth, and that said International Union, through its president, has declined so to do, although having full power and right to do so.  *  *  *

"18. Plaintiff further says that by reason of the unlawful action of the defendants as hereinabove set forth, as a result of which he was expelled from the union, he lost and has been deprived of certain benefits as a member of defendant unions and to which he was and had been entitled for many years as a member of said defendant unions."

The several defendants filed answers to the above declaration in which they deny the allegations therein charged. Kenneth Steiner, one of the defendants, and an employee of the department of buildings & safety engineering, by way of affirmative defense, states in answer to plaintiff's amended declaration:

"Answering paragraph 13, count 1, as amended, defendant admits that plaintiff was discharged from his position as an electrical inspector in the department of buildings & safety engineering on November 9, 1949, but he denies that plaintiff's discharge was the result of untrue and false accusations made against him by this defendant, either individually or jointly with others, and by way of further answer thereto, he alleges the true fact to be that plaintiff's discharge was in full compliance with the civil service provisions and procedure set up in the charter of the city of Detroit, and that said discharge was based upon the specific charges made by the commissioner of buildings & safety engineering, as hereinbefore stated.

"Further answering said paragraph, defendant denies that the charges made by said Commissioner Wolff against the plaintiff were false, and avers that said charges were found to be true by the civil service commission at said 2 hearings and that said findings constitute *res judicata* and preclude a trial in

this cause of the matters determined by the civil service commission.

"Further answering said paragraph, defendant avers that he had nothing to do with the preparation of exhibits A and B attached to plaintiff's amendment to declaration and he also denies that he had anything to do with plaintiff's expulsion from any union in which he was a member."

Defendant Joseph P. Wolff is commissioner of the department of buildings & safety engineering of the city of Detroit. He filed his answer to plaintiff's amended declaration in which he admits:

"That plaintiff became an employee of the department of buildings & safety engineering of the city of Detroit on July 1, 1926. Further answering said paragraph, defendant avers that plaintiff was thereafter laid off January 15, 1932, rehired July 1, 1940, laid off December 25, 1942, rehired May 22, 1945, and discharged by this defendant November 9, 1949.
* * *

"That on or about the spring of 1949 plaintiff was transferred from the work he was doing to other work, but defendant denies that such transfer was made for the reasons stated in said paragraph. Further answering said paragraph, defendant alleges the truth in fact to be that plaintiff was transferred because his work was unsatisfactory and because of numerous complaints filed against him regarding his conduct when making inspections. * * *

"This defendant denies that defendant Schoeninger virtually ran the department of buildings & safety engineering of the city of Detroit, and he denies that persons were hired or promoted in his department at the direction or through the influence of defendant Schoeninger, and he denies the other allegations therein contained. Further answering said paragraph, defendant alleges that employment promotions, and removals in the department of buildings & safety engineering of the city of Detroit were governed by the provisions of title 4, chapter 2 of the

charter of the city of Detroit, and are subject to investigation and approval by the civil service commission, and that no one may be employed, promoted, or removed from city employment through influence without complying with said civil service provisions. * * *

"Defendant avers that shortly after the publication of said letter in the Detroit News Letter Box, a copy of said publication was called to his attention by one of his subordinates. Further answering said paragraph, defendant denies the implication contained in said article to the effect that during Mayor Van Antwerp's administration his department was run by any contractors' business agent, and he denies the implication contained in plaintiff's declaration that he discharged the plaintiff because of the publication of said article. Further answering said paragraph, this defendant avers that he discharged plaintiff only for the reasons stated in his letter of discharge dated November 8, 1949, a copy of which was served upon the plaintiff November 9, 1949. Further answering said paragraph, defendant avers that plaintiff's discharge was subsequently sustained by the civil service commission as hereinafter more specifically stated; that the decision of said commission has not been reversed on appeal; that same is final and that such decision may not be attacked collaterally herein, and that therefore all reference to the said published letter in plaintiff's amended declaration and all reference in plaintiff's amended declaration as to the reasons for plaintiff's discharge ought in law to be stricken from said declaration."

The letter referred to was written by plaintiff and published in the Detroit News, a daily newspaper. The 3 major Detroit newspapers also published articles on November 27, 1949, from statements given to them by plaintiff. The following article is quoted from the Detroit News:

"MONOPOLY IS CHARGED ON ELECTRIC CONTRACTS. Fired Aid Lists City Officials. Association Man-

ager, Union Agent Deny They Dictate Who Gets Jobs. By Russell Harris (Reporter for News).

"A city-approved 2-man monopoly of Detroit's entire electrical contracting business was charged Saturday by a city inspector, who has been fired, he said, 'because they knew I was getting too close to the truth.'

"The inspector is Walter J. Sewell, 1302 Stanley avenue, an employee of the department of buildings & safety engineering since 1926. He made his charges in a statement prepared for his civil service appeal hearing Monday.

"3 ARE NAMED. Sewell named: Carl J. Schoeninger, secretary-manager of the Detroit Electrical Contractors' Association, former city electrical engineer and present member of the water board; Frank C. Riley, business agent for Local 58, International Brotherhood of Electrical Workers (AFL), a member of the public lighting commission; Joseph P. Wolff, department of buildings & safety engineering commissioner since 1930.

"Sewell said that Schoeninger and Riley rule Detroit's electrical industry with the help of Wolff in this way: The members of Schoeninger's association, 31 of Detroit's largest contractors, share the city's most lucrative contracts among themselves. Should an independent contractor bid on such a contract, Sewell says, Schoeninger has Riley threaten the independent with labor trouble.

"SAYS WORKERS STALL. Should the independent persist and receive the contract, Sewell says Riley orders his men to slow down on construction so that the independent loses money. Meanwhile, Sewell charges, Wolff helps break the independent by stalling on inspection and work orders, not only on the one project but on all other work the independent has under way.

"In one such instance, now under investigation by the department of justice, an independent contractor is said to have bid $19,000 on installation of electrical machinery in an auto plant. After threats by Riley,

he is said to have withdrawn his bid. The contract was awarded to a member of Schoeninger's association for $34,000.

"In another, a small contractor who persisted in bucking the combination was ordered out of Detroit by Riley, Sewell said. Contractors are nonvoting members of Riley's union, and Riley threatened to have the man blacklisted throughout the United States, Sewell charged.

"Tells of Complaint. The formal charges placed against Sewell are insubordination, irresponsible reporting of inspections, conduct unbecoming to an employee, 'unsatisfactory public contact' with citizens and electrical contractors and 'for the good of the service.'

"Hearing Is Monday. Sewell asked small contractors 'to stand up and tell your stories.' The hearing is at 2:45 p. m. Monday in the water board building."

The International Brotherhood of Electrical Workers and Local 58 of International Brotherhood of Electrical Workers and Francis C. Riley filed an answer to plaintiff's amended declaration in which they deny the allegations therein contained, and by way of affirmative defense state:

"That the plaintiff received timely, full, and adequate notice of a hearing upon the charges, as set forth in exhibits A and B attached to plaintiff's amended declaration, before Local 58 of the International Brotherhood of Electrical Workers, a voluntary association, and the plaintiff received a full, fair, and complete trial and hearing upon the said charges and upon any defense the plaintiff desired to offer, the said trial being held in all respects in accordance with the constitution and bylaws of the said union. They further allege that the said plaintiff did not seriously contest the said charges, and by not contesting them admitted tacitly, and also admitted expressly that the said charges were true. The said Local Union No. 58 found that the plaintiff was guilty of the said charges, and made a valid

order removing plaintiff from the said union, and thereafter the said plaintiff was duly notified in accordance with the constitution of his right to appeal the said decision, and he did not appeal the same within the time permitted to him to do so, or make any effort or take any steps toward appealing the same, and the plaintiff stands convicted of the said charges, and his conviction is final, and his removal from the said union is final, binding, and valid, and he is estopped from and cannot be heard to say the said charges were untrue or that his removal as a union member was not valid, and plaintiff is bound thereby.   These answering defendants expressly deny that the said defendant, Francis C. Riley, and the said defendant, Local 58 of the International Brotherhood of Electrical Workers, a voluntary association, were prompted by any malice against the plaintiff, but solely by their interests in the welfare of the defendant unions, the welfare of trade unionism in general, and the welfare of the ranks of organized labor.   The defendant, International Brotherhood of Electrical Workers, a voluntary association, denies that it took any part or participated in any of the charges or proceedings mentioned by the plaintiff in said paragraph 13.   *   *   *

"These defendants admit that the plaintiff did seek to have the president of the International Union intervene in his behalf, but said plaintiff failed utterly to follow the procedure required by the constitution and bylaws of both the International Union and the Local Union, in order to effectuate an appeal, and the order removing him from the Local Union stands final and valid without having been attacked in any way by any valid appeal procedures."

It appears that plaintiff's declaration is based upon a conspiracy by the defendants to have him discharged as an employee of the department of buildings & safety engineering in the city of Detroit and to expel him from Local 58 of International Brotherhood of Electrical Workers.   It also appears that

when plaintiff was discharged as a city employee on November 9, 1949, he appealed to the civil service commission of the city of Detroit. After a hearing the commission entered an order on December 19, 1949, a copy of which reads, in part, as follows:

"After consideration of all testimony submitted at the hearings regarding this protest, the following action was taken:

"By Commissioner Bellanca, supported by Commissioner Rathnaw, that it is the finding of this commission that the discharge of Walter Sewell was not made for political or for reasons other than the good of the service, and therefore, the protest is denied: Carried."

It also appears that plaintiff filed an application for leave to appeal in the nature of certiorari from the action of the civil service commission. On June 23, 1950, the application for leave to appeal was denied, and in an opinion the trial judge stated:

"In the notice of discharge, 5 reasons are set forth. I have examined the entire transcript of the proceedings taken before the civil service commission, and I find substantial testimony supporting the first 4 reasons given in the notice of discharge; and in view of such testimony, I cannot disagree with the finding of the commission that reason No. 5, namely, for the good of the service, is supported by proofs.

"There is no merit in the contention of the petitioner that he was denied his rights under the circumstances. All of the proceedings seem to be in accord with the provisions of the charter, and he was given a full and complete hearing. * * *

"Under the decisions of our Supreme Court, and there are many of them, this court has no power to hear this *de novo* and has no power to take any action in the premises other than to determine whether or not the civil service commission had jurisdiction,

whether it exceeded such jurisdiction, and whether it had testimony to support the reasons for the discharge and to warrant a finding that such reasons were not in fact political or religious. These decisions also state that the type of testimony to be offered is not controlled by rules which would prevail in this court and the proceedings are not in the nature of a criminal proceeding which will give to the defendant therein the information which would necessarily be accorded to him in this court upon a criminal proceeding. This court has no right to substitute its judgment for the judgment of the administrative body. A few of the cases that uphold this position are as follows: *In re Fredericks,* 285 Mich 262 (125 ALR 259); *Bischoff* v. *County of Wayne,* 320 Mich 376; *Mapley* v. *City of Pontiac,* 288 Mich 396; *Purdie* v. *Detroit Police Department Trial Board,* 318 Mich 430; *Aller* v. *Detroit Police Department Trial Board,* 309 Mich 382; *Goodfellow* v. *Detroit Civil Service Commission,* 312 Mich 226; *Martin* v. *Detroit Civil Service Commission,* 313 Mich 639.

"I think the law is so plain and decisive upon the foregoing point that it is unnecessary to determine whether or not he took action within the time allotted in making this petition for leave to appeal in the nature of certiorari. On the face of the record, he is not entitled to the issuance of a writ of certiorari. However, if the other point does become material, certainly the petition is not sufficient to excuse his delay in making application. He would be required to show that there was not culpable negligence upon his part and no such showing has been made."

It also appears that on December 11, 1950, the civil service commission granted plaintiff a rehearing which was concluded April 30, 1951. On May 7, 1951, the civil service commission again denied plaintiff any relief and affirmed its former decision. On July 16, 1951, plaintiff appealed to the Wayne circuit court and said appeal was dismissed June 17, 1953, because plaintiff failed to furnish the court with a

transcript of the testimony taken at the rehearing held by the civil service commission.

It also appears that following publication of plaintiff's statements to the 3 major daily Detroit newspapers, Carl J. Schoeninger, on January 3, 1950, filed charges against plaintiff, a copy of which reads as follows:

"January 3, 1950

"Edward McCarthy, Recording Secretary
Local Union 58 IBEW
55 Adelaide St.
Detroit 5, Michigan
*"Dear Sir and Brother:*

"As secretary-treasurer of the Detroit employees benefit board, and as a member of the International Brotherhood of Electrical Workers, in accordance with article 27 section 4 of the constitution of Int. Brothers of Elec. Workers, I wish to formally prefer charges under article 27, § 2, subsections 7 and 10 against Walter J. Sewell, card No. 543510.

"I wish to charge that under dates of November 27, 28, 29, 1949, Walton J. Sewell released to the 3 Detroit newspapers, namely, The Detroit News, Detroit Free Press and The Detroit Times, and caused to be published by the 3 above-named papers criminal and malicious statements affecting the character and integrity of the writer and creating a feeling of suspicion in the minds of the citizens of this community that a monopoly existed between the Detroit Electrical Contractors Association and Local 58 of the IBEW in attempting to coerce electrical contractors to refrain from performing certain work operations by threatening work stoppages and slow-down operations on certain work projects.

"Further that the hiring of electrical inspectors and the assignment of their inspection duties was controlled by a monopoly created by the commissioner of building & safety engineering of the city of Detroit, the business manager of Local 58 IBEW

and the writer as secretary-manager of the Detroit Electrical Contractors Association.

"The above charges were made to the local press by Walter J. Sewell in defense of his discharge as electrical inspector for the city of Detroit. Your attention is directed to the fact that at no time during the public hearing at which Mr. Sewell appealed to the civil service commission [of the] city of Detroit for reinstatement to his position as electrical inspector did Mr. Sewell present any evidence of coercion or collusion or make any reference to the charges as released to the public press.

"It is the contention of the writer that the misstatements and untrue implications made by Sewell are detrimental to the best interests of the employee's benefit board and will create undue opposition to compliance with the payment of pension contributions by electrical contractors not members of the Detroit Electrical Contractors Association; further, that the charges implying work stoppage and slowdown operations constitute a method of feather bedding which is detrimental to public interest as well as the best interest of organized labor.

"The privilege of filing civil suit for criminal slander and the possibilities of receiving a favorable decision against a disgruntled brother is small compensation for the disgrace and mental anguish the public charges have brought to my family. It is therefore respectfully requested that the procedure as outlined in article 27, § 6 of the constitution of the International Brotherhood of Electrical Workers be complied with at the earliest time possible in order that the charges made against the business manager of Local 58 IBEW, the commissioner of building & safety engineering of the city of Detroit and the writer may be aired and a determination made as to whether or not a monopoly or coercion existed which is detrimental to the electrical contracting industry.

"Your favorable consideration of this request will be greatly appreciated.

"Fraternally yours,
"Carl J. Schoeninger,
"Secretary-Manager.

"CJS :hd"

Following the above charges plaintiff was tried and dismissed as a member of the union. No appeal was taken from the order expelling plaintiff from the union.

On August 15, 1953, defendants Wolff and Steiner filed a motion to dismiss plaintiff's declaration based, in part, upon the following:

"That the duties of defendants herein are created by the provisions of title 4, chapter 16 of the charter of the city of Detroit dealing with the affairs of the department of buildings & safety engineering and such ordinances as have been enacted thereunder, and plaintiff's declaration and the amended declaration do not specifically allege any acts performed by these defendants which were not in accordance with such charter provisions and ordinances.

"That such official acts performed by these defendants dealing with the plaintiff have been passed upon on 2 occasions by the civil service commission and once by the circuit court on the merits of the complaint alleged in the present action herein; that on each of such hearings the findings were against plaintiff."

On October 26, 1954, Detroit Electrical Contractors Association and Carl J. Schoeninger also filed a motion to dismiss plaintiff's declaration based upon the following:

"1. That plaintiff fails to state a claim upon which relief as prayed may be granted.

"2. That article 27, § 1 of the constitution of the International Brotherhood of Electrical Workers provides as follows:

" 'Any member violating his obligation and resorting to a court of law for redress for any injustice he may believe has been done him by the IBEW, or any of its L.U.'s, until he first exhausted all his remedies through all the courts within the IBEW, shall stand automatically expelled and without rights of any kind.'

"3. That plaintiff for many years prior to November 8, 1949, was a member of Local Union 58 of the IBEW.

"4. That plaintiff as a member of the aforesaid union was subject to its laws and usages as contained, *inter alia,* in its constitution; that plaintiff in violation of article 27 of the aforesaid constitution failed to exhaust his internal remedies; that as a result thereof plaintiff now stands automatically expelled from the aforesaid union.

"5. That by reason of plaintiff's failure to pursue his internal remedies in the manner and to the extent provided in article 27 of the aforesaid constitution, plaintiff's own acts and omissions and not the acts of the defendants herein have resulted in his expulsion from the aforesaid union."

On November 23, 1953, International Brotherhood of Electrical Workers and Local 58 and Francis C. Riley also filed a motion to dismiss plaintiff's declaration based in part upon the following:

"Since the plaintiff did not exhaust his remedies before the labor union of which he was a member and whose constitution and bylaws he was subject to, the circuit court for Wayne county, Michigan, has no jurisdiction to hear the plaintiff's case and the same should be dismissed.

"Aside from official charges made against the plaintiff in relation to his employment, and also official charges made against the plaintiff in relation to his membership in Local 58 of the International Brotherhood of Electrical Workers, a voluntary association, all of which have been determined on the merits against the plaintiff, and which have been sus-

tained and substantiated as true by official determination, and not appealed from, the plaintiff has not made any allegations of any slanderous, libelous or defamatory statement or charges made against the plaintiff by any of these defendants, and the plaintiff's amended declaration does not state a cause of action on the basis of libelous or slanderous or any other possible form of defamation which is the only form of any cause of action suggested by the plaintiff's amended declaration or any part thereof, and the said amended declaration fails to state a cause of action for libel, slander or defamation and the same should be dismissed."

The several motions to dismiss plaintiff's declaration came on for a hearing, and on January 6, 1954, the trial court filed an opinion, which, in part, reads as follows:

"A general reading of the plaintiff's pleadings reveals that he does not deny that he did not take an appeal to the international union as provided by the constitution and bylaws of the union. He asserts that it would have been idle to do so, relying on *Howland* v. *Local Union 306, UAW–CIO,* 323 Mich 305.

"The court distinguishes the situation here from the situation discussed in that case. That was an equity case and the pleadings revealed that the defendant union itself had failed to observe the provisions of its own bylaws and constitution.

"The pleadings here reveal that the defendants had given the plaintiff a trial and that he failed to appeal. He attempts to rely upon a claim of fraud and futility, which we think is not sufficient to take the case out of the general rule, well established in this jurisdiction, that he must exhaust his remedy by appeal in the internal setup of the union to the international before coming to the Court.   *   *   *

"The defendants further urge that if this declaration is to be construed as declaring for relief upon libelous and/or slanderous statements, or false accu-

sations, that they are unavailable to the plaintiff now because of the statute of limitations.*

"The declaration declares that these statements were made in November, 1949. The original process was issued on September 24, 1952, which would seem to make any provisions based on libel and slander under whatever designation, unavailable to the plaintiff.

"As to the defendant Riley, this same ruling must apply because of the above findings, either that Riley was a part of the machinery of the international brotherhood, or he is guilty of libel or slander. So that the motion as to him must also be granted.

"The above rulings must also necessarily apply to the defendant Carl J. Schoeninger, who appears to be both a member of the Brotherhood of Electrical Workers and of the Electrical Contractors Association.

"Since obviously any liability of the Detroit Electrical Contractors Association, as such, must be based on a tort of its agent, the defendant Schoeninger, and the court having concluded as above, there remains no cause of action against the Detroit Electrical Contractors Association and the order to dismiss may cover them also."

Orders dismissing plaintiff's declaration were later filed in the circuit court of Wayne county. Plaintiff appeals and urges that his declaration states a cause of action and that the trial court was in error in dismissing his declaration.

An examination of plaintiff's declaration and its several amendments shows that plaintiff's claim for damages is predicated upon an assertion that he was discharged as an electrical inspector for the city of Detroit, and that he was removed from membership in Local 58 of the International Brotherhood of Electrical Workers which affected him adversely in his

---

* See CL 1948, § 609.13, subd 5, as amended by PA 1951, No 21 (Stat Ann 1955 Cum Supp § 27.605).—Reporter.

opportunity to obtain work as an electrician, and that he was discharged as a result of a hearing.

The defendants answered affirmatively that plaintiff had a full hearing, on the charges preferred against him, by the civil service commission, which charges were sustained and plaintiff was removed as an employee of the city of Detroit. Defendants also answered affirmatively that plaintiff was expelled from the union for writing a letter to the Detroit News, and for giving statements to the 3 major Detroit newspapers for publication.

It is a generally-accepted rule that when a defendant files a motion to dismiss a plaintiff's declaration, the material facts alleged in said declaration are conceded to be true. See *Alexander* v. *Prudential Insurance Company of America*, 293 Mich 522.

We note that plaintiff's declaration is based, in part, upon the claim that defendants:

"did cause false accusations and charges to be made against the plaintiff with the department of buildings & safety engineering, which false charges and accusations were prepared and presented by these defendants jointly and severally for the sole purpose of creating a fictitious basis for removing plaintiff from his position as an electrical inspector."

In *Roche* v. *Blair*, 305 Mich 608, 613, 614, we held that conspiracy standing alone without the commission of acts causing damages would not be actionable:

"The law is well established that in a civil action for damages resulting from wrongful acts alleged to have been committed in pursuance of a conspiracy, the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damages. The conspiracy standing alone without the commission of acts causing damage would not be actionable. The cause of action does not result from the conspiracy but from the acts done. Therefore,

in the present case the alleged conspiracy, which plaintiffs claimed to have first discovered in 1940, was not their cause of action. Their cause of action was the alleged wrongful acts of defendants, which caused their claimed damages. The allegations of conspiracy did not change the nature of plaintiffs' action."

It is urged by defendants Steiner and Wolff that the dismissal of plaintiff's second application for leave to appeal in the nature of certiorari by Judge O'Hara on July 17, 1953, by reason of plaintiff's failure to furnish the trial court the transcript of the rehearing held by the civil service commission, left the decisions of the civil service commission on the hearing and rehearing and the judge's opinion and order of denial in full force and effect.

In *Hailey* v. *Saginaw Justice of the Peace,* 320 Mich 59, 63, we said:

"The effect of a dismissal of an appeal is stated in 4 CJS, Appeal and Error, § 1386, pp 2007, 2008:

" 'On the dismissal of an appeal  *  *  *  the cause stands in the trial court as if no appeal had ever been taken;  *  *  *  the decree or order appealed from becomes final, *and the effect of such dismissal is to leave the parties where they were before the appellate proceeding was instituted.'* " (Emphasis supplied.)

We think the above rule should apply with equal force to quasi-judicial bodies such as the civil service commission of Detroit. In our opinion the action taken by the civil service commission on plaintiff's subsequent attempt to appeal is an adjudication that plaintiff was lawfully discharged from employment with the city of Detroit, and it also follows that any claim for damages against defendants Steiner and Wolff, growing out of such discharge, is foreclosed by reason of such discharge.

Plaintiff's declaration also alleges that he suffered damages as a result of his expulsion from Local 58 of the International Brotherhood of Electrical Workers and that such expulsion was caused by the unlawful actions and conducts of the union through their officers. The pleadings show that plaintiff was a member of the union until January 24, 1950, at which time he was expelled, and that such expulsion was the result of charges made against him by reason of his writing a letter to the Detroit News, and, also, for giving statements to 3 Detroit newspapers for publication, hereinbefore mentioned. It is urged by the union and their officers that any issue arising out of plaintiff's expulsion from the union is *res judicata* and forecloses plaintiff from claiming damages by reason of such expulsion.

We note the following provisions of the constitution of the International Brotherhood of Electrical Workers:.

"Article 27, § 13: Any member who claims an injustice has been done him by any local union or trial board, or by any railroad council, may appeal to the international vice-president any time within 30 days after the date of the action complained of. * * * A copy of any appeal must be filed with the local union, or with the railroad council, as the case may be."

"Article 27, § 17: Appeals to the international president and to the international executive council, and to the convention, to be considered, must be made within 30 days from the date of the decision appealed from. (Appeals to the international executive council and to the conventions must be filed with the international secretary.) If no appeal is made within 30 days from the date that any decision is rendered, such decision shall be considered final."

"Article 27, § 1: Any member violating his obligation and resorting to a court of law for redress

for any injustice he may believe has been done him by the International Brotherhood of Electrical Workers, or any of its local unions, until he first exhausted all his remedies through all the courts within the International Brotherhood of Electrical Workers, shall stand automatically expelled and without rights of any kind."

In *Mayo* v. *Great Lakes Greyhound Lines,* 333 Mich 205, 213, 214, we had occasion to discuss the rights of a member of a union who failed to exhaust his remedies within the union before resorting to court action. We there said:

"And it is important to note that if this determination was not fairly arrived at, the constitution and general laws of the union provided a method whereby the matter could have been appealed within the framework of the union. It is not the business of an equity court to assure union members that their union affairs shall be conducted in a thoroughly democratic manner.

" 'When the bylaws of fraternal organizations, if reasonable and valid, provide a mode for determining when relief shall be given or denied to members by tribunals provided for therein, redress therefor may not be sought in the courts. (Citing numerous cases.) *Ryan* v. *New York Central R. Co.,* 267 Mich 202, 209.' * * *

"The trial court was also justified in dismissing plaintiffs' bill of complaint on the ground that plaintiffs could not resort to court action until they had exhausted 'all of their remedies within the union before they applied to the court.' Section 81 of the 'Constitution and General Laws' under which the union and its members operate, provides in substance that any member or members of a local division feeling that they have been unlawfully dealt with by the local division have a right to appeal to the international president and the general executive board, and from the general executive board to the convention

of the association, but that such members must not take legal action or go into court until they have exhausted all their rights within the association and have finally appealed to the convention. Plaintiffs did not before instituting this suit and obtaining a restraining order appeal from the action taken by Division 1303. Hence, the court did not have jurisdiction because plaintiffs as members of a voluntary association, under the circumstances of this case, were bound by the provisions of the union's constitution and general laws. *Ryan* v. *New York Central R. Co., supra; Harris* v. *Detroit Typographical Union,* 144 Mich 422."

Plaintiff recognizes the authority stated in the above rule, but urges that any attempt to exhaust his remedies within the union would be futile and result in the denial of justice, for the reason that union officials have acted with malice and bad faith. Plaintiff relies on *Howland* v. *Local Union 306, UAW-CIO,* 323 Mich 305, where we held:

"While equity should not intervene to adjust differences between a voluntary labor association and a member thereof until and unless the member has exhausted the remedies provided in the constitution and bylaws to which he voluntarily subscribed, where it is shown that resort to such remedies would be ineffective if not futile, the jurisdiction of a court of equity would be properly invoked." (Syllabus 3.)

In the above case plaintiff was not given any notice of a trial as required by the constitution and bylaws of the local union. In the case at bar plaintiff was given notice of trial and had a trial on the merits. We also note that under article 27, § 13 of the constitution the aggrieved party has a right to appeal to the international vice-president within 30 days, and under article 27, § 17, if no appeal is taken within 30 days, such decision of the local shall be considered

final. We note that paragraph 15 of count 1 of plaintiff's declaration states:

"Plaintiff further says that he has sought to have defendant International Union, through its president, intervene and take action to undo the wrong perpetrated upon him by the defendants as hereinabove set forth, and that said International Union, through its president, has declined so to do, although having full power and right to do so."

We do not discover in plaintiff's declaration any claim that an appeal to the international vice-president would be a futile gesture. We conclude that plaintiff's failure to exhaust his remedies within the union precludes him from claiming any damages against the union and its officers as a result of such expulsion.

Plaintiff's allegations as to a conspiracy stem from his claim that the defendants acted in concert and singly to have him discharged from city employment and expelled from the union. We have already held that such actions complained of have been adjudicated, and there being no other actions from which damages are claimed, we conclude that plaintiff's allegations relating to a conspiracy do not state a cause of action.

The order dismissing plaintiff's declaration is affirmed, with costs to defendants.

DETHMERS, C. J., and SMITH, REID, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.