BLAIR v CHECKER CAB COMPANY

Docket No. 185916. Submitted September 4, 1996, at Detroit. Decided
November 1, 1996, at 9:30 A.M. Leave to appeal sought.

Nancy Blair brought an action in the Wayne Circuit Court against
Checker Cab Company after the defendant, a nonprofit corporation
made up of owners of taxicabs licensed for operation in the City of
Detroit, expelled the plaintiff from the defendant's membership for
violating a provision in the defendant's constitution and bylaws
prohibiting its members from soliciting drivers of other members
(hereafter "antitampering provision") by offering to lease taxicabs
to drivers at fees lower than those charged by the other members.
The plaintiff alleged that the hearing she received before her expul-
sion violated the defendant's constitution and bylaws and her right
to due process, that the antitampering provision gave rise to uncon-
stitutional involuntary servitude, and that the antitampering provi-
sion violated § 2 of the Michigan Antitrust Reform Act (MARA), MCL
445.772; MSA 28.70(2). The court, Marianne O. Battani, J., granted
summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. In ruling on the motion for summary disposition, the trial
court did not err in considering documentary evidence submitted
by the parties even though the defendant had specified that the
motion was brought under MCR 2.116(C)(8). MCR 2.116(G)(5) pro-
vides that a trial court may not consider documentary evidence
when considering a motion brought under MCR 2.116(C)(8). How-
ever, where, as here, a party brings a summary disposition motion
under the wrong subrule, the trial court may proceed under the
appropriate subrule as long as neither party is misled.

2. Because no state action was involved in the hearing the
defendant provided to the plaintiff, the trial court correctly dis-
missed the claim that the hearing violated due process. In dis-
missing the claim that the hearing violated the defendant's constitu-
tion and bylaws, the trial court did err in determining that the
plaintiff had failed to exhaust administrative remedies by not pur-
suing an appeal of the decision of the defendant's board of direc-
tors to the defendants' senior members. Such an appeal was not

required because it would have been futile inasmuch as the senior members could not have overruled the bylaws.

3. The claim of involuntary servitude is without merit inasmuch as the drivers and taxicab owners were free to choose not to work within the defendant or to work in another field altogether.

4. The trial court erred in summarily dismissing the claim under the MARA that the antitampering provision gave rise to a conspiracy or combination in restraint of trade. A corporation generally cannot conspire with its board of directors, officers, or employees, because a corporation acts only through those persons and conspiring with those persons would be conspiring with itself. However, an exception is recognized where a director has an independent personal stake in a particular action and, therefore, is actually acting on the director's own behalf. Here, the plaintiff alleged that the directors who decided to expel her had a personal stake in maintaining the higher lease rates they charged their drivers. Furthermore, agreements between competitors not to compete for each other's employees are generally regarded as having a monopolistic tendency so as to amount to an antitrust violation where the parties to the agreement are in a dominant position in the trade or industry affected.

5. The claim that the trial court abused its discretion in not giving the plaintiff an opportunity to amend her pleadings before summary disposition was granted is made moot with the reinstatement of the claim based on the MARA and the claim that plaintiff's expulsion violated the defendant's constitution and bylaws. Amendment would have been for a second time, thus requiring the permission of the trial court, MCR 2.118, but the plaintiff did not seek such permission. The plaintiff also did not indicate what the amendments would have been, thus failing to provide a basis upon which to show that amendment would not have been futile.

Affirmed in part, reversed in part, and remanded.

1. CONSTITUTIONAL LAW — INVOLUNTARY SERVITUDE.

The federal constitution and the state constitution prohibit involuntary servitude in provisions containing nearly identical language; the state provision should be interpreted in conformity with the federal provision (US Const, Am XIII; Const 1963, art 1, § 9).

2. CONSTITUTIONAL LAW — INVOLUNTARY SERVITUDE.

Involuntary servitude is the coerced service of one person for another through the use, or threatened use, of law, physical force, or some other method that causes the laborer to believe that the laborer has no alternative to performing the service; where the laborer has some alternative to performing the service, even if distasteful or

less attractive than the service, there is no involuntary servitude (US Const, Am XIII; Const 1963, art 1, § 9).

3. CONSPIRACY — CORPORATIONS — DIRECTORS.

A corporation generally cannot conspire with its directors because a corporation acts through its directors; an exception is recognized where a director has an independent personal stake in an action and, therefore, is actually acting on the director's own behalf.

4. MONOPOLIES — EMPLOYERS — AGREEMENTS NOT TO COMPETE FOR EMPLOYEES — RESTRAINT OF TRADE.

Agreements between competitors not to compete for each other's employees are generally regarded as having a monopolistic tendency so as to amount to an antitrust violation where the parties to the agreement are in a dominant position in the trade or industry affected (15 USC 1 et seq.; MCL 445.772; MSA 28.70[2]).

*Milton R. Henry*, for the plaintiff.

*Alan R. Miller, P.C.* (by *Thomas J. Fayfer*), for the defendant.

Before: YOUNG, P.J., and TAYLOR and R. C. LIVO,* JJ.

TAYLOR, J. Plaintiff appeals as of right from an order granting summary disposition of her complaint against defendant. We affirm in part, reverse in part, and remand.

Defendant is a voluntary nonprofit corporation whose members own and operate taxicabs that are licensed by the City of Detroit. The purpose of the corporation is to promote the private business interests of its membership through the rendition of certain services that include the operation of a computerized telephone referral and dispatch system. Defendant's constitution and bylaws contain an antitampering provision that provides that members

---

* Circuit judge, sitting on the Court of Appeals by assignment.

may be expelled if they attempt to solicit a driver of another member.

Plaintiff became a member of the corporation in 1991. Like other members, plaintiff leased her taxicabs to drivers on a daily basis. In 1994, she was accused of violating the antitampering provision by soliciting other members' drivers to lease a taxicab from her at a lower daily rate. After notice and an opportunity to be heard at a scheduled meeting of defendant's board of directors, the board found that plaintiff had violated the antitampering bylaw and ordered her to pay a fine of $5,000. The board further ordered that plaintiff be expelled in the event that she did not pay the fine.

Plaintiff was subsequently expelled for failure to pay the fine. Plaintiff then filed a lawsuit against defendant, alleging: (1) the hearing she was provided was contrary to defendant's constitution and bylaws and denied her due process; (2) the antitampering bylaw implemented an unconstitutional system of involuntary servitude; and (3) the antitampering bylaw violated § 2 of the Michigan Antitrust Reform Act (MARA), MCL 445.772; MSA 28.70(2).

Plaintiff first argues that the trial court erred in considering documentary evidence in granting the motion for summary disposition. We disagree.

Defendant specifically moved for summary disposition pursuant to MCR 2.116(C)(8). Nevertheless, defendant submitted documentary evidence in support of its motion. MCR 2.116(G)(5) provides that the trial court may not consider documentary evidence when considering summary disposition motions brought pursuant to MCR 2.116(C)(8). However, where a party brings a summary disposition motion

under the wrong subrule, the trial court may proceed under the appropriate subrule as long as neither party is misled. *Ruggeri Electrical Contracting Co, Inc v Algonac*, 196 Mich App 12, 18; 492 NW2d 469 (1992). Here, in opposing defendant's motion for summary disposition, plaintiff relied on her pleadings and documentary evidence and argued that genuine issues of material fact remained. Because plaintiff was not misled by defendant's citing the wrong subrule, the trial court did not err in considering documentary evidence and could consider the motion pursuant to subrule C(10). *Id.*

Plaintiff also claims that the hearing she was provided violated defendant's constitution and bylaws and her right to due process. The trial court summarily dismissed this claim because plaintiff did not exhaust her administrative remedy to appeal the board's decision to the senior members of the corporation as allowed by defendant's constitution and bylaws. Generally, summary disposition pursuant to MCR 2.116(C)(4) (lack of jurisdiction) is proper when a party such as plaintiff has failed to exhaust her administrative remedies. See *Sewell v Detroit Electrical Contractors Ass'n*, 345 Mich 93, 119-120; 75 NW2d 845 (1956); *W A Foote Memorial Hosp v Dep't of Public Health*, 210 Mich App 516, 522; 534 NW2d 206 (1995). However, a party is not required to exhaust internal remedies (1) when such a step would be futile, *Manor House Apartments v City of Warren*, 204 Mich App 603, 605; 516 NW2d 530 (1994), or (2) under certain circumstances before filing a claim based on a constitutional issue. See *Michigan Supervisors Union OPEIU Local 512 v Dep't of Civil Service*, 209 Mich App 573, 578; 531 NW2d 790 (1995); *W*

*A Foote Memorial Hosp, supra* at 524. Here, any appeal to defendant's senior members would have been futile because the senior members could not overrule the bylaws. Thus, an appeal would have been futile because defendant's senior members could not have granted plaintiff the relief she sought. However, summary dismissal of plaintiff's due process claim was proper because the hearing did not involve state action. See *Christensen v Michigan State Youth Soccer Ass'n, Inc*, 218 Mich App 37, 42-43; 553 NW2d 638 (1996); *Khalifa v Henry Ford Hosp*, 156 Mich App 485, 498; 401 NW2d 884 (1986). Therefore, plaintiff may argue on remand that her expulsion was not handled in accordance with defendant's constitution and bylaws, but may not argue that her rights to due process were violated.

Plaintiff also claims that the bylaw that she was found to have violated creates an unconstitutional system of involuntary servitude because drivers were limited in their ability to take positions with other taxicab owners who were members of defendant. Initially, we question whether plaintiff has standing to raise this specific claim on behalf of others (the drivers).[1] In any event, the claim is without merit. Both the Michigan and United States Constitutions prohibit involuntary servitude. US Const, Am XIII; Const 1963, art 1, § 9. Because the language of these provisions is nearly identical and there is no constitutional authority for interpreting these provisions differently, the

---

[1] The drivers would have standing. See, e.g., *Roman v Cessna Aircraft Co*, 55 F3d 542 (CA 10, 1995) (engineer had standing to contest on antitrust grounds an alleged agreement between Cessna and the Boeing Company not to hire each other's engineers).

Michigan provision should be interpreted in conformity with the federal provision. *People v Pickens*, 446 Mich 298, 315; 521 NW2d 797 (1994). Involuntary servitude is defined in federal case law as the coerced service of one person for another through the use, or threatened use, of law, physical force, or some other method that causes the laborer to believe that the laborer has no alternative to performing the service. *United States v Mussry*, 726 F2d 1448, 1453 (CA 9, 1984). Where the laborer has some alternative to performing the service, even if distasteful or less attractive than the service, there is no involuntary servitude. *Brogan v San Mateo Co*, 901 F2d 762, 763-764 (CA 9, 1990). Because both the drivers and the owners could choose to work outside defendant company, or work in another field, plaintiff's involuntary servitude claim fails.

Plaintiff further argues that the trial court improperly granted summary disposition of her claim that defendant violated the MARA by forming a conspiracy or combination in restraint of trade. MCL 445.772; MSA 28.70(2). We agree.

The trial court's opinion indicates that the court granted summary disposition of the MARA claim pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief may be granted). In deciding such a motion, the court must accept all factual allegations as true and construe them most favorably to the nonmoving party. *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992). Such a motion should be granted only if the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.; Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). Applying

these rules, we find summary disposition of plaintiff's antitrust claim to have been improper.

The trial court held that plaintiff's antitrust claim was subject to summary disposition because it did not allege a combination of two or more persons. MCL 445.772; MSA 28.70(2) provides: "A contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful," and this Court has found that an agent or employee cannot be considered a separate entity from his principal or corporate employer, respectively, as "long as the agent or employee acts only within the scope of his agency of [sic] employment." *Metro Club, Inc v Schostak Bros & Co, Inc*, 89 Mich App 417, 420; 280 NW2d 553 (1979). In interpreting a similar provision of the Sherman Antitrust Act, 15 USC 1 *et seq.*, federal courts have found that a corporation generally cannot conspire with its board of directors, officers, or employees, because a corporation acts only through those persons and conspiring with those persons would be like conspiring with itself. See *Domed Stadium Hotel, Inc v Holiday Inns, Inc*, 732 F2d 480, 486 (CA 5, 1984); *Rothery Storage & Van Co v Atlas Van Lines, Inc*, 597 F Supp 217, 225 (D DC, 1984). Thus, there can be no conspiracy between a corporation and its directors if the directors are acting on behalf of the corporation. Anno: *Business units or persons within single, commonly owned enterprise as conspiring with each other in violation of § 1 or § 3 of Sherman Act (15 USCS §§ 1,3)*, 20 ALR Fed 682, § 7. Federal courts have found an exception to this general rule, however, where the directors have an independent personal stake in a particular action and, therefore,

are actually acting on their own behalf. *Domed Stadium Hotel, supra* at 486, n 5; *Rothery Storage & Van Co, supra* at 225.

Because the MARA and the Sherman Act require similar evidence of concerted action or combination, this Court will consider federal precedent interpreting the Sherman Act's prohibition on combination in restraint of trade. *Mohammed v Union Carbide Corp*, 606 F Supp 252, 257 (ED Mich, 1985) (the MARA and the Sherman Act require similar evidence of concerted action or combination, and similar tests are used under the two acts to determine if a corporation and its officers could have formed a conspiracy).

Construing plaintiff's complaint in her favor, we find that it implies a combination between defendant and the members of its board of directors and it also implies a conspiracy between defendant and its officers. Plaintiff made several allegations suggesting that the directors who adopted the challenged bylaw benefited personally from that decision. Plaintiff alleged that the directors sought to prevent plaintiff from leasing cabs to drivers at a lower rate than "that established by some of the directors of the corporation, who were also cab owners with substantially higher rates." Plaintiff also alleged that her initial hearing was conducted by directors "who had a pecuniary interest in the outcome of the proceedings." Further, plaintiff alleged that the bylaw was enacted to prevent an owner from offering a lower daily rental rate to drivers. These allegations could be understood as a claim that defendant and its directors were conspiring to fix the price of daily lease payments for a taxicab and, therefore, to restrain trade in the business. Also, the allegations that the directors had a

pecuniary interest in the antitampering clause allows an inference that the directors were acting independently of, and therefore could conspire with, defendant.

Our determination that defendant's antitampering bylaw facially constitutes an antitrust violation is supported by federal case law. Anno: *Validity, under the federal antitrust laws (15 USC §§ 1* et seq.*), of agreements between employers or employer associations imposing restrictions on employment,* 2 ALR Fed 839, 840, summarizes the general rule as follows:

> Agreements between competitors not to compete for each other's employees have generally been regarded as having a monopolistic tendency so as to amount to a violation of the Sherman Act and related statutes, at least where the parties to the agreement are in a dominant position in the trade or industry affected.

In *Nichols v Spencer Int'l Press, Inc,* 371 F2d 332 (CA 7, 1967), the court held that it was error to have granted summary judgment of antitrust claims when the plaintiff alleged a "no-switching" agreement between two companies wherein each company agreed not to hire employees of the other company. The *Nichols* court stated:

> [A]greements among supposed competitors not to employ each other's employees not only restrict freedom to enter into employment relationships, but may also, depending on circumstances, impair full and free competition in the supply of a service or commodity to the public. [*Id.* at 336.]

In *Quinonez v Nat'l Ass'n of Securities Dealers, Inc,* 540 F2d 824 (CA 5, 1976), it was alleged that members of a brokerage association had agreed not

to pirate each other's employees and not to hire applicants who had been fired or rejected for employment by any other member firm. The court held that a private antitrust lawsuit challenging the agreement stated a cause of action under the Sherman Act because it alleged blocking of interchange among employees of the securities industry and a synergetic threat of business boycott if the blacklist were not honored.

Plaintiff's final argument on appeal is that the trial court abused its discretion by not giving her the opportunity to amend her complaint before entering the summary disposition order. This issue is moot to the extent that we are reinstating plaintiff's MARA claim and the claim that her expulsion was contrary to defendant's constitution and bylaws. Regarding the other claims, we find that plaintiff is not entitled to any relief. MCR 2.116(I)(5) states that if a party moves for summary disposition pursuant to subrule C(8), (9), or (10), the court shall provide the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified. Pursuant to MCR 2.118, plaintiff was required to seek the trial court's permission to amend her pleadings because she had already amended her pleadings once. Furthermore, plaintiff did not request permission to amend her pleadings. Because the court did not offer plaintiff a chance to amend her pleadings in response to defendant's motion, we assume that the court found that amendment would be futile on the basis of the evidence then before it. Plaintiff has not demonstrated that this was incorrect and has not suggested

what amendments she would have made. Under these circumstances, we find no error.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

HARRIS v UNIVERSITY OF MICHIGAN BOARD OF REGENTS

Docket No. 177036. Submitted January 10, 1996, at Grand Rapids. Decided November 5, 1996, at 9:00 A.M. Leave to appeal sought.

Scott A. Harris brought an action in the Court of Claims against the University of Michigan Board of Regents, James J. Duderstadt, the university's president, and Jack Weidenbach, the university's athletic director, seeking damages for injuries sustained by the plaintiff, a member of the university's men's intercollegiate gymnastics team, during a team visit to Colorado for a gymnastics competition. The plaintiff was injured in a sledding accident when, between competitions, the team's coach, Robert K. Darden, II, led the team on a sledding outing. Pursuant to stipulation, the Court of Claims case was consolidated with a case that the plaintiff brought against Darden in the Washtenaw Circuit Court. All the defendants moved for summary disposition on the basis of governmental immunity. The trial court, Donald E. Shelton, J., denied Darden's motion, but granted summary disposition for the Board of Regents, Duderstadt, and Weidenbach and dismissed the Court of Claims action. The plaintiff appealed.

The Court of Appeals *held*:

Intercollegiate athletics is a governmental function of a public university that entitles it to governmental immunity. The proprietary function exception to governmental immunity does not apply under the facts of this case.

1. The plaintiff failed to produce evidence that created a genuine issue of fact whether the athletic program was a proprietary function. The record supports the conclusion that profit is not the primary motive for the athletic program and that intercollegiate athletics is normally supported by taxes. The court properly determined that the university's operation of its athletic program was not a proprietary function and that the university was entitled to governmental immunity. Summary disposition for the Board of Regents in the Court of Claims action was appropriate.

2. The trial court properly granted summary disposition for the two individual defendants in the Court of Claims action on the basis that the plaintiff failed to allege any facts that could establish

that they were grossly negligent and therefore not entitled to governmental immunity.

Affirmed.

1. GOVERNMENTAL IMMUNITY — INTERCOLLEGIATE ATHLETICS.

Intercollegiate athletics is a governmental function of a state university that entitles it to governmental immunity (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — PROPRIETARY FUNCTION EXCEPTION.

An activity must be conducted by a governmental entity primarily for the purpose of producing a pecuniary profit and not normally be supported by taxes or fees to be considered a proprietary function not subject to governmental immunity; whether an activity is proprietary does not depend on whether it actually generates a profit; a governmental agency may conduct an activity on a self-sustaining basis without being subject to the proprietary function exception (MCL 691.1413; MSA 3.996[113]).

3. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — GROSS NEGLIGENCE — SUMMARY DISPOSITION.

A governmental employee is entitled to summary disposition on the basis of statutory governmental immunity in a jury action where it is uncontroverted that the employee was acting within the scope of authority while in the exercise or discharge of a governmental function and the court finds that, on the pleaded facts, reasonable jurors could not conclude that the defendant's conduct had been so reckless as to demonstrate a substantial lack of concern for whether an injury would result (MCL 691.1407[2]; MSA 3.996[107][2]).

*Kantner and Associates* (by *Veronique Lerner*), for the plaintiff.

*C. J. Hurbis* and *Mary F. Clinton*, for the defendants.

Before: NEFF, P.J., and SAAD and MARKEY, JJ.

SAAD, J.

I

NATURE OF THE CASE

This case raises two interrelated legal questions of first impression and of particular importance to intercollegiate athletics in Michigan. First, is intercollegiate athletics a governmental function of a public university so as to immunize the university from tort liability? Second, if so, does the proprietary function exception to governmental immunity apply under the facts of this case? For reasons stated in this opinion, we hold that intercollegiate athletics is a governmental function of a state university that entitles it to governmental immunity and that, on the record presented here, the proprietary function exception does not apply.

II

FACTS AND PROCEEDINGS BELOW

Plaintiff, a student member of the University of Michigan men's intercollegiate gymnastics team, sued the University of Michigan Board of Regents, the university president (James J. Duderstadt), the director of athletics (Jack Weidenbach), and the gymnastics coach (Robert K. Darden, II) for injuries that he sustained during a team visit to Colorado for a gymnastics competition. The trial court denied Darden's motion for summary disposition, but granted summary disposition for the Board of Regents, Duderstadt, and Weidenbach, on the basis of governmental immunity. Plaintiff now appeals from the grant of summary disposition.

On March 7, 1990, plaintiff was in Colorado with the University of Michigan's gymnastics team. The gymnastics team is operated by the university's

athletic department. Between competitions, coach Darden led the team on a sledding outing and provided plastic trash bags for the team to use as sleds. While sledding, plaintiff crashed into a tree at the bottom of the slope and injured his face and head.

Plaintiff filed two lawsuits. Plaintiff first filed suit in the Court of Claims against defendants Board of Regents, Duderstadt, and Weidenbach and alleged that because the athletic department's activities were conducted primarily to produce a profit, they are proprietary and therefore not sheltered by governmental immunity. Pursuant to stipulation, this case was consolidated with a case in the Washtenaw Circuit Court in which plaintiff sued Darden for negligence.

After consolidation, all defendants moved for summary disposition on the basis of governmental immunity under MCL 691.1407; MSA 3.996(107). The university argued that operating an athletic program was a governmental function for which it was entitled to immunity. Duderstadt and Weidenbach contended that they were entitled to governmental immunity because plaintiff failed to allege gross negligence against them. In response to defendants' motion, plaintiff argued that the athletic department was engaged in a proprietary function, not a governmental function, and that he had properly pleaded his claims against Duderstadt and Weidenbach.

The trial court found that the "operation of a program of intercollegiate athletics is a legitimate function of an educational institution and [has] certainly traditionally been so." As such, the trial court found that athletic programs at state universities are " 'expressly or impliedly mandated or authorized by constitution, statute . . . or other law' and are there-

fore a government function." (Citations omitted.) After finding that the athletics program was a government function, the trial court proceeded to address plaintiff's argument regarding the proprietary function exception and found:

> Affidavits submitted by the University, as well as audits submitted by the plaintiff, conclusively establish that only football and basketball at the University produce revenues which exceed expenses and that all other sports, including men's gymnastics, operate at a loss and are supported by football and basketball net revenues. It is abundantly clear that the nonrevenue sports, including the one at issue here are not conducted primarily for profit. Nor does the submitted material suggest that the athletic program as a whole is a proprietary function.

Therefore, the trial court granted summary disposition to the Board of Regents, Duderstadt, and Weidenbach in the Court of Claims action. Plaintiff now appeals.

### III

### ANALYSIS

#### A. GOVERNMENTAL FUNCTION

The University of Michigan (and its governing board, the Board of Regents) is one of the governmental units to which Michigan's governmental immunity statute applies. MCL 691.1401(c),(d); MSA 3.996(101)(c),(d).[1] MCL 691.1407(1); MSA 3.996(107)(1) provides:

---

supervision of its institution and the control and direction of all expenditures from the institution's funds.