THE METRO CLUB, INC v SCHOSTAK BROTHERS & COMPANY,
INC

Docket No. 78-1872. Submitted March 20, 1979, at Detroit.—Decided
April 2, 1979. Leave to appeal denied, 406 Mich 995.

The Metro Club, Inc., sought on several occasions to rent tempo-
rary space in the corridors of Macomb Mall during the Christ-
mas season for the purpose of offering for sale its "discount
passbook". Roseland Shopping Center, owner of Macomb Mall,
through its managing agent, Schostak Brothers & Company,
Inc., consistently refused to lease to plaintiff, although it con-
sistently leased space to plaintiff's principal competitor. The
decision to refuse to lease space to plaintiff was made by the
chief operating officer of Schostak Brothers and the manager of
the mall, an employee of Schostak Brothers. Plaintiff brought
an action against Schostak Brothers & Co., Inc., and Roseland
Shopping Center, doing business as Macomb Mall, for injunc-
tive relief, alleging restraint of trade and competition. The
Macomb Circuit Court, George R. Deneweth, J., dismissed
plaintiff's complaint after finding that there was neither a
prohibited agreement nor an illegal restraint of trade nor
interference with competition. Plaintiff appeals. *Held:*

1. Plaintiff failed to establish an illegal combination as re-
quired by the Michigan restraint of trade statute, since an
agent and employees of an agent are regarded as a single actor.

2. Refusal to lease space in a shopping center does not
constitute a restraint of trade under the Michigan restraint of
trade statute, as evaluated in accordance with the rule of
reason, where such refusal to lease did not harm the public or
stifle competition.

Affirmed.

1. MONOPOLIES — RESTRAINT OF TRADE — AGENTS — EMPLOYEES —
STATUTES.

The requirement of the Michigan restraint of trade statute that

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
Practices § 458.
[2] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade

there be a combination of capital, skill or arts by two or more persons, firms, partnerships, corporations or associations is not established by a combination of an agent and employee of the agent working on behalf of a single principal (MCL 445.701; MSA 28.31).

2. MONOPOLIES — RESTRAINT OF TRADE — RULE OF REASON — STATUTE.

Refusal to lease space in a shopping center does not constitute a restraint of trade or competition under the Michigan restraint of trade statute, as evaluated in accordance with the rule of reason, where such refusal to lease did not harm the public or stifle competition (MCL 445.701; MSA 28.31).

*Lawrence W. Rattner,* for plaintiff.

*Maddin & Maddin,* for defendant.

Before: D. C. RILEY, P.J., and M. J. KELLY and BEASLEY, JJ.

PER CURIAM. Plaintiff publishes and markets in the Detroit metropolitan area a product known as the Metro Book, a "discount passbook" consisting of several hundred coupons which entitles the bearer to purchase entertainment, meals and other services at reduced prices at designated establishments. Defendants are the managing agent and owner, respectively, of the Macomb Mall, a large enclosed shopping center in Macomb County. Plaintiff sought on several occasions to rent temporarily a kiosk in the corridors of Macomb Mall during the Christmas shopping season, in order to offer its passbooks for sale to shoppers. Defendants consistently refused to lease to plaintiff, but just as consistently rented a kiosk to plaintiff's principal competitor, Sports Unlimited, Inc., which marketed a similar discount passbook.

After learning that its attempts to lease space in Macomb Mall for the 1975 Christmas selling season had been rejected again, plaintiff brought this

action alleging that defendants' conduct restrained trade and competition in violation of the basic Michigan antitrust statute, MCL 445.701; MSA 28.31, and should be enjoined. No preliminary relief was granted. The circuit court heard the case without a jury on April 27 and April 28, 1978.

At the close of the proofs, the trial judge concluded that plaintiff had proven neither a prohibited agreement nor an illegal restraint of trade nor interference with competition. We agree and affirm.

Insofar as is pertinent to plaintiff's complaint, MCL 445.701; MSA 28.31 defines an illegal trust as,

"a combination of capital, skill or arts by 2 or more persons, firms, partnerships, corporations or associations of persons, or of any 2 or more of them, for either, any or all of the following purposes:

"1. To create or carry out restrictions in trade or commerce;

* * *

"3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity."

At the threshold, plaintiff failed to demonstrate the requisite combination of two or more entities. No evidence established, or even plausibly suggested, that defendants had conspired or acted in concert with any third party, including Sports Unlimited, in refusing to deal with plaintiff. Jerome Schostak, the chairman and chief executive officer of defendant Schostak Brothers & Company, Inc., and David Brock, an employee of Schostak Brothers who managed the mall's day-to-day operations, maintained that the decision not to lease space to plaintiff was a unilateral managerial

decision based upon a number of factors, notably their desire to obtain a better "tenant mix" which would increase the diversity of goods available to shoppers. Brock also wished to maintain the satisfactory existing relationship with Sports Unlimited.

So far as the testimony indicates, only Schostak and Brock participated in the decision to exclude plaintiff. Each acted in his capacity as officer or employee of Schostak Brothers, which in turn served as managing agent for Roseland Shopping Center. Thus, all of the conduct of which plaintiff complains was performed on behalf of the same principal: Roseland Shopping Center (Macomb Mall). The statute which plaintiff invokes plainly contemplates "a combination of capital, skill or arts" by a plurality of actors. Other states with similar antitrust statutes modeled after the Sherman Act have concluded that an agent and his principal, or an employee and his corporate employer, may not be counted separately for purposes of finding a proscribed combination, so long as the agent or employee acts only within the scope of his agency of employment. *Padgitt v Lone Star Gas Co,* 213 SW2d 133, 136 (Tex Civ App, 1948), *Bondi v Jewels by Edwar Ltd,* 73 Cal Rptr 494, 498; 267 Cal App 2d 672 (1968), *Exxon Corp v Wagner,* 154 NJ Super 538; 382 A2d 45, 48 (1977). The Federal courts have arrived at a similar interpretation of § 1 of the Sherman Act, 15 USC § 1. See Anno: 20 ALR Fed 682 (1974). Upon the present facts, defendants, Schostak, and Brock must be regarded as a single actor.

Nor did plaintiff establish that defendants had acted with a forbidden purpose to restrain trade or prevent competition, or that the anti-competitive effects of defendants' conduct necessarily indicated

such a purpose. An alleged restraint of trade should be evaluated in accordance with the rule of reason. *People, ex rel Attorney General v Detroit Asphalt Paving Co,* 244 Mich 119, 127; 221 NW 122 (1928), *Barrows v Grand Rapids Real Estate Board,* 51 Mich App 75, 83-88; 214 NW2d 532 (1974). The trial judge concluded that the public was not harmed, nor was competition in discount passbooks stifled, because of defendants' refusal to lease a kiosk to plaintiff. Plaintiff marketed its passbook in other shopping malls within the same general region. Indeed, Metro Books were sold in the customer service office of one of Macomb Mall's major chain stores, and defendants' counsel represented to the court that plaintiff could market its passbook through any regular tenant whose lease permitted it to sell general merchandise. Thus, even if plaintiff had successfully demonstrated a plurality of actors, a covenant against leasing to competitors, and a relevant market, the restrictive or anti-competitive effect of its inability to obtain a kiosk would not have been cognizable under the rule of reason. The trial court's findings and conclusions in this regard are amply supported by the evidence.

Underlying the trial judge's decision was his view that a landlord "is not required to accept every tenant who comes with the money in hand to pay the rent", so long as no discriminatory or otherwise illegal purpose for refusal is involved. The trial judge characterized defendants' conduct as an exercise of their "legitimate managerial prerogative" to choose the parties with whom they would deal. While we do not predicate our holding on this position, we note that individual refusals to deal have generally been held not to be prohibited under state antitrust laws. 54 Am Jur 2d, Monopo-

lies, Restraints of Trade, and Unfair Trade Practices, § 581, p 1006.

Plaintiff's second assignment of error is without merit.

Affirmed.