HUMAN RESOURCE INSTITUTE OF
NORFOLK, INC., Plaintiff and
Defendant on Counterclaim,

v.

BLUE CROSS OF VIRGINIA, Defendant
and Plaintiff on Counterclaim,

and

Dietrich W. Heyder, M.D., et al., Additional Defendants on Counterclaim.

Civ. A. No. 78–0528–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 23, 1980.

**64**

Anthony F. Troy, Henry T. Wickham, Stephen A. Northup, Kenneth F. Ledford, George W. Taylor, Jr. and M. Scott Hart, Mays, Valentine, Davenport & Moore, Richmond, Va., plaintiff and defendant on counterclaim.

Thomas F. McPhaul, Norfolk, Va., for Heyder.

William B. Smith, Virginia Beach, Va., for Abdou.

R. Gordon Smith, Gilbert E. Schill, Jr., McGuire, Woods & Battle, and Robert S. Brewbaker with Richard L. Williams, and R. Gordon Smith, Anne M. Whittemore and James H. Walsh, Richmond, Va., for defendant and plaintiff on counterclaim.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff Human Resource Institute of Norfolk, Inc. (HRI), a private psychiatric hospital, brings this action against Blue Cross of Virginia (BCV), a non–profit Virginia corporation which provides prepaid hospital services to subscribers. Plaintiff, which is not a participating hospital in the Blue Cross system, alleges that BCV has engaged in acts and practices intended to force HRI out of business or into the status of a Blue Cross participating hospital, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Pendent state claims,[1] based on factual allegations similar to those upon which the Federal claims are based, are included in the complaint.

Jurisdiction is founded on Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and on 28 U.S.C. §§ 1331(a) and 1337. BCV has moved for summary judgment on all counts. HRI has responded, the parties have briefed the issues, the Court has heard oral argument, and the matter is ripe for disposition.

HRI's complaint sets forth a number of actions allegedly taken by BCV in furtherance of a conspiracy and an attempt to monopolize the business of third party payment for hospital services. Plaintiff contends that BCV has refused to process promptly, and properly, HRI's claims for covered services; that BCV has wrongfully demanded repayment of $3,000,000 from HRI on claims already paid, and has instituted baseless litigation in state court to recover that amount; that BCV has tortiously defamed plaintiff; and that BCV has reduced the coverage afforded to non–participating hospitals.

Initially, plaintiff also named as a defendant the Blue Cross Association (BCA), an Illinois corporation which owns the Blue Cross name and symbol and which licenses local plans such as BCV to use them. While it was not alleged that BCA itself engaged in the acts described in the above paragraph, HRI contended that BCA had conspired with BCV, in that BCA had "agreed

---

1. Plaintiff's state claims against HRI are as follows: breach of contract; malicious defamation; conspiracy to injure plaintiff in violation of Va.Code § 18.2‑499; violation of Va. Unfair Trade Practices Act, Va.Code §§ 38.1‑49 *et seq.*

to, encouraged, and assisted in"[2] those acts. On February 8, 1980, this Court granted summary judgment to BCA on all counts. *Human Resource Institute of Norfolk, Inc. v. Blue Cross of Virginia and Blue Cross Association*, 484 F.Supp. 520 (D.C.Va.). It was there found that plaintiff's claims as to BCA's involvement in the alleged conspiracy, unsupported by any significant probative evidence, were insufficient to withstand the motion for summary judgment in the face of affidavits of BCA officers denying any such conspiratorial interaction and setting forth facts inconsistent with any inference of conspiracy.

## I. *Plaintiff's Conspiracy Claims*

Plaintiff contends that BCV's alleged attempt to force HRI out of business or into the status of a participating hospital was undertaken in conspiracy with BCA, the Blue Cross participating hospitals in the BCV service area, and "various others".[3] Both a conspiracy in restraint of trade, in violation of the Sherman Act, Section 1, and a conspiracy to monopolize, in violation of the Sherman Act, Section 2, are alleged. As heretofore noted, BCA has been eliminated as a possible conspirator. As for the "various others", plaintiff has been unable to elicit any evidence of their identity or participation, and has apparently abandoned its allegations as to them, in that no mention of unnamed coconspirators was made at oral argument or in plaintiff's memorandum in opposition to the instant motion. Thus, the possible cast of characters in the alleged conspiracy has been narrowed to BCV and its participating hospitals.

In support of its motion for summary judgment, defendant has filed affidavits of BCV officers stating that the decisions to engage in the acts and practices complained of were made by BCV alone, without prior consultation with, and not pursuant to any agreement with, the Blue Cross participating hospitals. The affidavit of BCV President Alden Flory declares that neither the decision to bring suit against HRI, nor any statements concerning HRI, were made in complicity with the member hospitals. Similarly, the affidavits of BCV's Director of Benefit Control and its Director of Claims state that their respective divisions decide whether to pay or deny a particular HRI claim without consultation or agreement with the participating hospitals.

HRI has uncovered no evidence which refutes the sworn statements of the BCV officers; indeed, the Court's understanding is that HRI does not seek to challenge the literal truth of the statements. At oral argument, counsel for plaintiff conceded that the sole issue of fact is the question of the defendant's motive in engaging in the acts and practices of which plaintiff complains.[4] In the Court's view, plaintiff's forthright concession on this point amounts to an admission that there is no genuine issue of material fact which would preclude summary judgment on the conspiracy claims. In that plaintiff is unable to point to any disputed factual issues which would bear on defendant's motive, the question of whether BCV had an illegal motive in acting as it did is a question of law.

There being no issue of fact, plaintiff's conspiracy claims are now based on the theory that the acts of defendant are concerted as a matter of law. HRI argues that a conspiracy in violation of the Sherman Act exists by virtue of the agency relationship[5] between BCV and its member hospitals. The acts of the agent, BCV, are legally the acts of its members, so plaintiff argues; and therefore, any action taken by BCV with regard to the administration and operation of the BCV plan are alleged to be conspiratorial.

2. Complaint, paragraph 28.

3. Complaint, paragraph 11.

4. Transcript of hearing held August 1, 1980, at 24 25 and 26-27.

5. BCV's enabling act provides:

> A hospital or a group of hospitals may conduct through a nonstock corporation as agent for them a plan or plans for furnishing prepaid hospital and similar or related services. Va.Code § 38.1 810.

This "walking conspiracy" argument is based on the recent decision of the Court of Appeals for the Fourth Circuit in *Virginia Academy of Clinical Psychologists v. Blue Shield*, 624 F.2d 476 (4th Cir. 1980.) In that case, the Court condemned as violative of the Sherman Act Section 1 a Blue Shield policy which provided that payment for services performed by psychologists would be made only when those services were billed through a physician. The Court found that the Blue Shield plans were "combinations of physicians, operating under the direction and control of their physician members." *Id.*, at 479.

■ The Court is of the opinion that plaintiff's reliance on the *VACP* case is misplaced. *VACP* does not stand for the proposition that an agency relationship, or a "collective nature", can, without more, bring a prepaid health plan within the purview of the Sherman Act. Rather, the Court's discussion of the facts in *VACP* makes it clear that it was the abundant evidence of physician control of the plans which established the existence of a combination or conspiracy. The Court cited the fact that the plans' by-laws required that a majority of the Boards of Directors be physicians, and that five members of the Boards be elected from a list of physicians designated by the Medical Society of Virginia. In addition, the panel found evidence tending to show physician control in Blue Shield documents and statements made by plan officers.

In the instant case, there are no comparable structural factors that would facilitate the type of provider control condemned in *VACP*. Indeed, BCV's enabling statute requires that a majority of a plan's Board of Directors be subscribers, i. e. health care consumers.[6] As presently constituted, the Board includes 9 subscribers, 5 hospital representatives, and the President of Blue Cross. Admittedly, subscriber majority on the Board does not necessarily preclude the possibility of member hospital control. However, in that plaintiff has no direct evidence of member control of BCV, and is asking the Court to make inferences of such control from BCV's structure, it is instructive to note that if BCV's structure points anywhere, it is away from any such inference.

■ There is not a scintilla of evidence tendered to the effect that BCV has conspired with its member hospitals, either through a traditional combination, or through a structure that allows provider control. Therefore, summary judgment on HRI's conspiracy claims must be granted to defendant.

## II.  *Plaintiff's Attempt to Monopolize Claims*

The second count of plaintiff's complaint alleges that BCV has conspired to monopolize and attempted to monopolize in violation of Section 2 of the Sherman Act. As noted above, the Court finds no evidence of conspiracy, either to restrain trade or to attempt to monopolize. Therefore, only the allegation that BCV alone has attempted to monopolize remains. As with the conspiracy claims, there are, for the attempted monopolization claim, no disputed issues of material fact.

The defendant challenges HRI's standing to sue for attempted monopolization on the grounds that plaintiff neither competes in the same market as defendant, nor is located "within the sector of the economy in which the [alleged] violation threatened a breakdown of competitive conditions." *South Carolina Council of Milk Producers v. Newton*, 360 F.2d 414, 418 (4th Cir. 1966). Plaintiff responds by acknowledging that HRI does not compete directly with BCV, but urges that HRI is within the "target area" of the economy. Plaintiff argues that insofar as BCV controls the market for third party payment for hospital services, it dictates the providers from whom consumers will buy in the neighboring market for psychiatric services, in which plaintiff competes.

6.  Va.Code § 38.1 816.

The indeterminacy of this area of antitrust law is illustrated by the fact that both parties cite *Milk Producers* for their respective positions. Resolution of the standing issue in the instant case is rendered the more difficult, and indeed inappropriate, by the fact that the Court has not been given the benefit of a clear definition of the relevant markets, nor any helpful evidence as to the relationship between the market for psychiatric services and the market for third party payment for hospital services. A decision on the standing issue, however, is unnecessary; for even if plaintiff unquestionably had standing to sue, and regardless of how the relevant markets are defined, defendant is entitled to summary judgment on the merits.

■ Two separate elements must be proved to establish an attempt to monopolize: a specific intent to monopolize, coupled with the consequent dangerous probability of success. *Swift and Co. v. United States*, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905); *Lorain Journal Co. v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951). The Court finds, on the basis of the undisputed facts, that BCV did not have the requisite intent.

■ The Supreme Court of the United States has made clear that while the completed offense of monopolization requires only a *general* intent, a "specific intent to destroy competition or build monopoly", *Times Picayune Publishing Co. v. United States*, 345 U.S. 594, 626, 73 S.Ct. 872, 890, 97 L.Ed. 1277 (1953) is essential to a finding of attempted monopoly. A mere intent to prevail over rivals or to improve market position is insufficient. Even an intent to perform acts which can be objectively viewed as tending toward the acquisition of monopoly power is insufficient, unless it appears that the acts were not "predominantly motivated by legitimate business aims." *Times Picayune, supra* at 627, 73 S.Ct. at 890.

Plaintiff concedes that after many months of discovery it has no direct evidence that BCV specifically intended to seek a monopoly position in the market for third party payment for hospital services. Further, plaintiff has not claimed that it needs more time to seek evidence of specific intent.[7] Thus, HRI's position as to intent is based entirely on the argument that the requisite intent can be inferred from the undisputed facts in the record.

■ Plaintiff is correct in stating that specific intent to monopolize need not be shown by direct evidence. In this area of antitrust law as in others, courts have been sensitive to the obvious fact that those who intend to perform evil deeds rarely broadcast their intentions. Thus, specific intent to monopolize may be inferred from extreme predatory or exclusionary conduct. *United States v. Jerrold Electronics Corp.*, 187 F.Supp. 545 (E.D.Pa.1960), *aff'd* 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed.2d 806 (1961); *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir. 1974). The Court, however, is of the opinion that the facts presented are insufficient as a matter of law to support such an inference.

■ An examination of the facts upon which plaintiff relies reveals the highly resistable nature of the inference it urges the Court to adopt. That BCV has refused to process HRI's claims promptly, that it has instituted state court litigation to recover what it claims are overpayments, and that it has allegedly defamed plaintiff, indicate only that the parties are in substantial disagreement concerning their respective rights and obligations. It is not for this Court to decide the merits of their contractual and other disputes. The fact that BCV has reduced the coverage it affords to non–participating hospitals indicates no more than that BCV intends and seeks to make participation in the Blue Cross system more attractive than non–participation. Antitrust law does not condemn effective merchandising. *Traveler's Insurance Co. v. Blue Cross*, 481 F.2d 80, 84 (3d Cir.) *cert. denied* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973). The Court is unable to infer from

---

7. Transcript of hearing held August 1, 1980, at 15.

these ambiguous, if not innocuous, facts that defendant specifically intended to monopolize the market for third party payment for hospital services.

Having so concluded, there is no necessity of addressing the question of whether the defendant has shown itself to be entitled to summary judgment on the basis of the second element of the attempted monopolization offense: a dangerous probability that the attempt will succeed. Indeed, a decision on this issue would be inappropriate on the present state of the record. Defendant's affidavits do not speak to this point. Moreover, the Court has not been given the benefit of a full development of the facts that might bear on the likelihood of BCV achieving a monopoly, such as the history of and trends in the relevant markets, the market share that would be regarded as indicative of monopoly power, or the number and vitality of BCV's competitors, despite the fact that ample opportunity has been granted plaintiff to ferret out any such evidence.

For the reasons heretofore stated, summary judgment will be granted to defendant BCV on both counts; and the pendent state claims will be dismissed without prejudice.