DESGRANGES PSYCHIATRIC CENTER, PC v BLUE CROSS &
BLUE SHIELD OF MICHIGAN

Docket No. 54787. Submitted March 10, 1982, at Lansing.—Decided
February 11, 1983. Leave to appeal applied for.

Plaintiff Desgranges Psychiatric Center, P.C., provides outpatient
mental health care services to children and their families. The
center was incorporated by plaintiff Louise Desgranges, M.D., a
child psychiatrist, and employs plaintiff Kathleen Desgragnes,
who has a master's degree in social work. Dr. Desgranges
became a participating physician on November 11, 1978, under
a contract with defendant, Blue Cross and Blue Shield of
Michigan, which provided that the doctor must certify that the
services she provides and for which she seeks reimbursements
are performed personally by her or under her direct and
personal supervision and in her presence. On January 12, 1979,
Dr. Desgranges requested an application to secure a participa-
tion agreement with defendant for her psychiatric center for
reimbursement for outpatient child psychiatry care. The re-
quest for an application was never granted due to a morato-
rium imposed by defendant on the granting of any further
outpatient psychiatric clinic participation agreements. Had the
application been granted, the clinic could have been reimbursed
for services by a social worker with a master's degree. Plaintiffs
thereafter brought an action in the Genesee Circuit Court
charging defendant with a violation of Michigan's antitrust
statute and with maintaining an unlawful monopoly. Plaintiffs
further alleged that the requirement of Dr. Desgranges' reim-
bursement agreement that she be personally present when
psychiatric care is given is an unconscionable contract provi-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair
Trade Practices §§ 21, 449, 458.

[2] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
Practices §§ 34, 43. [3] 61 AM JUR 2D, PHYSICIANS, SURGEONS, AND
OTHER HEALERS §§ 158-165.

[4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 378-
392.

[5] [No reference]

sion that inhibits the doctor from engaging in medically accepted methods of diagnosis and treatment. The trial court, Philip C. Elliott, J., ruled that defendant's maintenance of its moratorium on the approval of new outpatient psychiatric clinics was unreasonable and violated Michigan antitrust statutes. The trial court made no ruling on plaintiffs' claims that the personal presence requirement of the doctor's reimbursement agreement with defendant is unconscionable. Defendant appeals and plaintiffs cross-appeal. *Held:*

1. The evidence presented below was not sufficient to establish that defendant combined or conspired with any other party to restrain trade in violation of Michigan's antitrust statute, MCL 445.701; MSA 28.31. The trial judge's findings of fact do not contain a determination that an unlawful combination between defendant and certain outpatient psychiatric clinics was established. It was not shown that the agreements restrained trade.

2. There is no evidence that the participation agreements between defendant and various outpatient psychiatric clinics contain any provision that would inhibit defendant from entering into a similar agreement with plaintiffs. The decision to impose the moratorium on any further such agreements appears to have been made solely by defendant.

3. The evidence in the record refutes plaintiffs' argument that defendant is composed of a diversity of constituent groups which make defendant itself a combination of two or more entities.

4. The record establishes that defendant's decision not to contract with plaintiffs was a unilateral one. A unilateral action, no matter how anticompetitive it may be, does not amount to a combination to restrain trade. Therefore, the trial court erred in finding defendant's actions constituted a combination to restrain trade.

5. A remand is not necessary to determine whether the provision in defendant's reimbursement contract with Dr. Desgranges, that she be personally present when psychiatric care is administered, is unconscionable and unreasonable since the Court of Appeals has held that such a clause does not invade the physician-patient relationship and has noted that doctors are still free to use social workers without master's degrees in their clinics. The only difference is the financial source to which they must now look for compensation.

Reversed.

MacKenzie, J., concurred with the holding that the record

contains insufficient evidence that the moratorium was the result of a combination to support the trial court's finding of a violation of MCL 445.701; MSA 28.31. However, she did not agree with all of the majority's reasoning. She noted:

1. The moratorium unilaterally imposed by defendant bears no reasonable relationship to the need for outpatient psychotherapy clinics and specifically outpatient child psychotherapy clinics. The moratorium does not reduce waste or unnecessary treatment, but instead cuts defendant's costs by discouraging subscribers from utilizing benefits which defendant has contracted to provide.

2. A new statute, MCL 550.1502(3); MSA 24.660(502)(3), evidently permits restrictions in participation agreements such as those at issue here. Fortunately, subscribers and providers will soon have a remedy under a new act, MCL 550.1501 *et seq.;* MSA 24.660(501) *et seq.,* which requires defendant to develop a provider class plan. Providers and subscribers will be able to raise the concerns expressed here when the Commissioner of Insurance eventually determines whether defendant is meeting the required goals.

OPINION OF THE COURT

1. MONOPOLIES — ANTITRUST.

The most basic element of a cause of action under Michigan's antitrust statute is proof of the requisite combination of two or more entities (MCL 445.701; MSA 28.31).

2. MONOPOLIES — ANTICOMPETITIVE ACTIONS — UNILATERAL ACTIONS — COMBINATIONS TO RESTRAIN TRADE.

A unilateral action, no matter how anticompetitive it may be, does not amount to a combination to restrain trade (MCL 445.701; MSA 28.31).

3. PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT RELATIONSHIP — PARTICIPATION AGREEMENTS.

A clause contained in a participation agreement between a doctor and a voluntary nonprofit medical care and hospital service corporation which requires the doctor to certify that the services he provides and for which he seeks reimbursements are performed personally by him or under his direct and personal supervision and in his presence does not invade the physician-patient relationship.

4. PHYSICIANS AND SURGEONS — HEALTH CARE PROVIDERS — REIM-
BURSEMENT CONTRACTS.

*The statute regarding reimbursement contracts of professional
health care providers permits restrictions in reimbursement
provisions of a provider contract or reimbursement arrange-
ment which require the doctor to certify that the services he
provides and for which he seeks reimbursements are performed
personally by him or under his direct and personal supervision
and in his presence (MCL 550.1502[3]; MSA 24.660[502][3]).*

5. PHYSICIANS AND SURGEONS — NONPROFIT HEALTH CARE CORPORA-
TIONS — PROVIDER CLASS PLAN.

*A health care corporation is required under the Nonprofit Health
Care Corporation Reform Act to develop a provider class ·plan
in conformity with the requirements of the act (MCL 550.1501
et seq.; MSA 24.660[501] et seq.).*

*Pelavin, Pelavin & Powers, P.C. (by Frumeth
Brenda Hirsh),* for plaintiffs.

*Foster, Swift, Collins & Coey, P.C. (by Theodore
W. Swift* and *William K. Fahey),* and *Michael T.
Zajac* and *Daniel E. Lazaroff,* of counsel, for defen-
dant on appeal.

Before: M. J. KELLY, P.J., and T. M. BURNS and
MACKENZIE, JJ.

PER CURIAM. Coming before this Court on an
appeal as of right, defendant Blue Cross-Blue
Shield of Michigan argues that the lower court
erred in entering a declaratory judgment on No-
vember 5, 1980, finding that defendant's refusal to
contract with plaintiffs constituted a combination
to restrain trade in violation of the provisions of
MCL 445.701; MSA 28.31. Plaintiffs cross-appeal as
of right from the trial judge's refusal to award
them damages for the alleged antitrust actions of
defendant and the trial judge's failure to find that
the provision in the contract between the defen-
dant and Dr. Louise Desgranges requiring the

doctor to be personally present when any psychiatric care was given to a patient by the plaintiff psychiatric center was unconscionable and void as against public policy.

Plaintiff Desgranges Psychiatric Center is a professional corporation that provides outpatient mental health care services to adolescent children and their families. It was incorporated by Dr. Desgranges, a child psychiatrist, and the staff includes a full psychologist as well as plaintiff Kathleen Desgranges, who has a master's degree in social work.

Defendant, a voluntary nonprofit medical care and hospital service corporation, has provided service benefits for outpatient medical health care administered by a participating clinic since 1966. In January, 1979, Dr. Desgranges requested an application to secure a participation agreement with defendant for reimbursement for outpatient child psychiatry care.

On November 11, 1978, Dr. Desgranges became a participating physician under a contract with defendant. Pursuant to this contract, Dr. Desgranges must certify that the services she provides and for which she seeks reimbursements are performed personally by her or under her direct and personal supervision and in her presence. Thus, plaintiffs can receive reimbursement only for services provided personally by Dr. Desgranges and only for psychological testing conducted by a certified psychologist.

Dr. Desgranges' January 12, 1979, request for an application to secure a participation agreement with defendant for her psychiatric center was never granted due to a moratorium imposed by defendant on the granting of any further outpatient psychiatric clinic participation agreements.

Had the application been granted, Dr. Desgranges'
clinic could have been reimbursed for services by a
social worker with a master's degree as well as
services by a psychiatrist.

In the instant action, plaintiffs charge defendant
with violating Michigan's antitrust statute by
maintaining its moratorium on the approval of
new outpatient psychiatric clinics for participation
in defendant's reimbursement scheme. Plaintiffs
also allege that defendant maintains an unlawful
monopoly over the outpatient psychiatric service
market in Genesee County and that the require-
ment of Dr. Desgranges' reimbursement agree-
ment that she would be personally present when
psychiatric care is given is an unconscionable
contract provision that inhibits Dr. Desgranges
from engaging in medically accepted methods of
diagnosis and treatment.

Following a lengthy hearing held below, the
trial judge ruled that defendant's maintenance of
its moratorium on the approval of new outpatient
psychiatric clinics was unreasonable and violated
Michigan's antitrust statutes. The trial judge made
no ruling on plaintiffs' claim that the "personal
presence" requirement of Dr. Desgranges' reim-
bursement agreement with defendant is unconscio-
nable.

The dispositive issue in this appeal is whether
the evidence presented below was sufficient to
establish that defendant combined or conspired
with any other party to restrain trade in violation
of Michigan's antitrust statute. That statute, MCL
445.701; MSA 28.31, makes it unlawful in this
state to participate in:

"a combination of capital, skill or arts by two or more
persons, firms, partnerships, corporations or associa-

tions of persons, or of any two or more of them, for either, any or all of the following purposes:

"1. To create or carry out restrictions in trade or commerce;

* * *

"3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity."

As was noted by this Court in *Metro Club, Inc v Schostak Brothers & Co, Inc,* 89 Mich App 417, 419; 280 NW2d 553 (1979), the most basic element of a cause of action brought under this statute is proof of "the requisite combination of two or more entities". Plaintiffs sought to prove the existence of an unlawful combination between defendant and certain outpatient psychiatric clinics by showing that they were parties to a participation agreement that restrained trade. However, the trial judge's findings of fact do not contain a determination that such a combination was established.

The mere fact that participation agreements between defendant and various outpatient clinics exist is insufficient proof of an illegal combination without evidence to show that the agreements restrained trade. *Id.* Plaintiffs' theory that the agreements restrain trade is seriously undermined by plaintiffs' admission that they enable "subscribers to receive health care benefits". Thus, they would appear to facilitate trade. Most damaging to plaintiffs' argument that the agreements are unlawful is the fact that the purpose of this lawsuit is to obtain such an agreement. If the agreements are unlawful, then this Court cannot affirm the lower court judgment as to do so would have the effect of ordering defendant to enter into an unlawful contract with plaintiffs.

Further, there is no evidence in the record that

defendant and the participating outpatient psychiatric clinics entered into any type of agreement that would deny plaintiffs an opportunity to secure such a participation agreement. Specifically, there is no evidence that the participation agreements between defendant and various outpatient psychiatric clinics contain any provision that would inhibit defendant from entering into a similar agreement with plaintiffs. Rather, the decision to impose a moratorium on any further such agreements appears to have been made solely by defendant.

We recognize plaintiffs' argument that defendant is composed of a diversity of constituent groups which make defendant itself a combination of two or more entities. However, the evidence in the record refutes this argument. Unlike the situation in *Virginia Academy of Clinical Psychologists v Blue Shield of Virginia,* 624 F2d 476 (CA 4, 1980), *cert den* 450 US 916; 101 S Ct 1360; 67 L Ed 2d 342 (1981), defendant's bylaws do not require that a majority of the board of directors be physicians or psychiatrists. In fact, nearly 60% of defendant's board of directors are consumer representatives. Because of the structure of defendant's board of directors then, the questionable type of provider control criticized by the *Virginia Academy* court is not present in this case. For this reason that case is distinguishable. *Human Resource Institute of Norfolk, Inc v Blue Cross of Virginia,* 498 F Supp 63 (ED Va, 1980).

Thus, the record establishes that defendant's decision not to contract with plaintiffs was a unilateral one. A unilateral action, no matter how anticompetitive it may be, does not amount to a combination to restrain trade. *Theatre Enterprises, Inc v Paramount Film Distributing Corp,*

346 US 537; 74 S Ct 257; 98 L Ed 273 (1954); *Overseas Motors, Inc v Import Motors Ltd, Inc,* 375 F Supp 499 (ED Mich, 1974), *aff'd* 519 F2d 119 (CA 6, 1975). Therefore, the lower court erred in finding that defendant's actions constituted a combination to restrain trade in violation of MCL 445.701; MSA 28.31.

Although the lower court did not render a decision on whether the provision in defendant's reimbursement contract with Dr. Desgranges that she be "personally present" when any psychiatric care is administered is unconscionable and unreasonable, we find that a remand to determine this matter is not necessary. As this Court noted in *Michigan Ass'n of Psychotherapy Clinics v Blue Cross & Blue Shield of Michigan,* 101 Mich App 559, 571-573; 301 NW2d 33 (1980), *modified in part* 411 Mich 869; 306 NW2d 101 (1981), such a clause does not invade the physician-patient relationship, "Doctors are still free to use social workers without master's degrees in their clinics. The only difference is the financial source to which they must now look for compensation".

Reversed.

MACKENZIE, J. *(concurring).* I am constrained to agree with the majority's holding that the record before us contains insufficient evidence that the moratorium was the result of a combination to support the trial court's finding of a violation of MCL 445.701; MSA 28.31. I do not, however, endorse all of the reasoning which the majority proffers in support of that result.

On cross-appeal, plaintiffs argue that Dr. Desgranges' participation agreement with defendant was unconscionable and void because it violated MCL 550.310; MSA 24.600, which provided in part:

"A nonprofit medical care corporation shall not impose restrictions on the doctors of medicine, doctors of osteopathic medicine, or doctors of surgical chiropody or podiatry, or doctors of chiropractic, who treat its subscribers as to methods of diagnosis or treatment. The private physician-patient relationship shall be maintained and the subscriber shall at all times have free choice of doctor of medicine, doctor of osteopathic medicine, or doctor of surgical chiropody or podiatry, or doctor of chiropractic."

Plaintiffs argue that, in view of the foregoing provision, the trial court erred by denying them declaratory and injunctive relief. The majority rejects that argument in view of *Mich Ass'n of Psychotherapy Clinics v Blue Cross & Blue Shield of Michigan,* 101 Mich App 559, 571-573; 301 NW2d 33 (1980), *modified in part* 411 Mich 869; 306 NW2d 101 (1981). Whether or not that case was correctly decided, plaintiffs' claim for declaratory and injunctive relief is now untenable because MCL 550.310; MSA 24.600 was repealed by 1980 PA 350, the Nonprofit Health Care Corporation Reform Act, effective April 3, 1981. The analogous provision of the new act is MCL 550.1502(3); MSA 24.660(502)(3), which provides:

"A health care corporation shall not restrict the methods of diagnosis or treatment of professional health care providers who treat members. Each member of the health care corporation shall at all times have a choice of professional health care providers. *This subsection shall not apply to limitations in benefits contained in certificates, to the reimbursement provisions of a provider contract or reimbursement arrangement, nor to standards set by the corporation for all contractng providers."* (Emphasis added.)

The emphasized language evidently permits re-

strictions in participation agreements such as those at issue here.

The record before us contains disturbing evidence that the moratorium unilaterally imposed by defendant bears no reasonable relationship to the need for outpatient psychotherapy clinics and specifically outpatient child psychotherapy clinics. Many of defendant's subscribers are being relegated to the offices of individual participating psychiatrists at which reimbursement is not possible under defendant's rules for the multidisciplinary approach to therapy, which approach is generally recognized as preferable in this field. The ostensible reason for the moratorium was to allow time for development of methodologies for determining the need for outpatient psychotherapy clinics, but defendant has since rejected the methodologies developed by the state without proffering any of its own and extended the moratorium indefinitely. The record suggests that the moratorium does not reduce waste or unnecessary treatment, but instead cuts defendant's costs by discouraging subscribers from utilizing benefits which defendant has contracted to provide.

Fortunately, subscribers and providers will soon have a remedy under the new act. Under part 5 of the act, MCL 550.1501 *et seq.;* MSA 24.660(501) *et seq.,* defendant was required to develop a provider class plan which met, among other requirements, those of MCL 550.1504(1); MSA 24.660(504)(1):

"A health care corporation shall, with respect to providers, contract with or enter into a reimbursement arrangement to assure subscribers reasonable access to, and reasonable cost and quality of, health care services, in accordance with the following goals:

"(a) There will be an appropriate number of providers

throughout this state to assure the availability of certificate-covered health care services to each subscriber.

"(b) Providers will meet and abide by reasonable standards of health care quality.

"(c) Providers will be subject to reimbursement arrangements that will assure a rate of change in the total corporation payment per member to each provider class that is not higher than the compound rate of inflation and real economic growth."

Providers and subscribers will be able to raise the concerns expressed here when the Commissioner of Insurance eventually determines whether defendant is meeting the required goals; see MCL 550.1509, 550.1510, 550.1515; MSA 24.660(509), 24.660(510), 24.660(515).