*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

SUMANCHANDRA M. PATEL, M.D.,

    Plaintiff-Appellant,

v

COREWELL HEALTH, doing business as
BEAUMONT HEALTH WAYNE,

    Defendant-Appellee.

UNPUBLISHED
May 08, 2026
10:12 AM

No. 374477
Wayne Circuit Court
LC No. 23-012159-CZ

---

Before: BAZZI, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

In this action for age discrimination, antitrust, and tortious interference with a business expectancy (tortious interference), plaintiff appeals as of right the trial court's order granting defendant summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case involves plaintiff's application for clinical privileges at Beaumont Wayne Hospital (Beaumont Wayne), which defendant operates. To admit and treat patients at Beaumont Wayne, defendant required physicians to be "members of the Medical Staff and have clinical privileges commensurate with their specialty."

Plaintiff was born in 1942. He owned a family medicine practice, K&S Family Practice Clinic, from 1992 to 2014. Plaintiff had active clinical privileges at Beaumont Wayne from October 1992 to February 2018.[1] During an interview for a faculty position in 2018, Sarju Shah, M.D., who was the chief of Beaumont Wayne's family medicine department, asked plaintiff, "[w]hy you want [sic] to continue practicing?" Shah stated to plaintiff, "[y]ou are old." In 2020,

---

[1] He stated most patients whom he needed to treat at a hospital were admitted at Beaumont Wayne.

Ashok Jain, M.D., who was Beaumont Wayne's chief medical officer, also expressed to plaintiff: "Dr. Patel, you are now getting old. Why you want [sic] . . .to practice?"[2]

Plaintiff requested an application for clinical privileges in Beaumont Wayne's family medicine department in February 2022. Beaumont Wayne's bylaws specified the procedure for granting clinical privileges. The bylaws stated, "An application for appointment is complete when all items specified in [the] Medical Staff Policy have been received." After Beaumont Wayne staff verified an applicant's credentials, the chief of the applicable medical department interviewed the applicant. The Credentials Committee and Medical Staff Executive Committee then submitted written reports and recommendations to the Board of Trustees, who had final authority to grant clinical privileges.

Beaumont Wayne received plaintiff's application for clinical privileges in March 2022. Amanda Radomski, who managed defendant's credentialing services, said plaintiff's application did not include necessary information. In addition to other requirements not relevant to this appeal, plaintiff did not provide "a letter from a covering physician . . . ." Defendant required an applicant for clinical privileges to submit a statement from another physician "indicating that he/she explicitly agrees to be available in your absence to provide continuous care to your patients."

In June 2022, Muzammil Ahmed, M.D., Beaumont Wayne's Chief of Staff, e-mailed plaintiff, stating his application was incomplete and could not be processed. After plaintiff did not provide a covering physician agreement, defendant administratively withdrew his application. In November 2022, Marilyn Hester, defendant's credentialing coordinator, e-mailed plaintiff, stating she prepared a new application for plaintiff to complete. Vijaykumar Patel, M.D. (V. Patel) agreed to be plaintiff's covering physician. Defendant received plaintiff's application on January 3, 2023. As part of the application, plaintiff signed a release form which stated:

> I hereby release from any and all liability Beaumont Health, the Oakwood Healthcare Inc, William Beaumont Hospital and Botsford General Hospital, their facilities and subsidiary corporations, and their directors, trustees, officers, medical staff, employees and agents (together, "Beaumont Hospitals") for their acts performed in good faith and without malice in the investigation, consideration and evaluation of my appointment or reappointment.

In February 2023, Hester e-mailed plaintiff, stating the "initial verification process" for plaintiff's application "has been completed." Vivian Powell, Beaumont Wayne's Medical Staff Coordinator, further informed plaintiff that he needed to complete two interviews. In March 2023, V. Patel e-mailed Powell and stated: "I will not be able to cover [plaintiff] for patient care at Beaumont Wayne now and in the future." Plaintiff claimed Jain advised V. Patel not to serve as plaintiff's covering physician. However, V. Patel asserted he was not coerced or pressured into withdrawing

---

[2] Plaintiff was not sure what Jain meant and said it was "possible" Jain "meant something positive." Plaintiff averred Jain further "instruct[ed] me to enjoy my money and land and forget about practicing medicine."

as plaintiff's covering physician, and Jain similarly denied pressuring V. Patel. Radomski, Shah, and Ahmed stated plaintiff's application was incomplete and was never considered on the merits.

Plaintiff subsequently filed a complaint, alleging defendant's employees violated the Michigan Antitrust Reform Act, MCL 445.772, by "conspir[ing] to restrain Plaintiff from practicing medicine . . . ." Plaintiff claimed defendant tortiously interfered with his business relationships with his patients. Lastly, he argued defendant committed age discrimination under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, because his age "was a substantial factor" in the denial of clinical privileges. Plaintiff requested an injunction requiring defendant "to complete the credentialing process . . . ."[3]

The trial court issued a scheduling order setting the discovery cutoff as May 1, 2024. In his first request for production on April 12, 2024, plaintiff requested his "full application file" from defendant, in addition to all communications between defendant's employees regarding his application. Defendant objected to the latter request as vague and unduly burdensome. On July 5, 2024, defense counsel e-mailed plaintiff's counsel documents responding to the request for production. On August 1, 2024, plaintiff moved to compel compliance with a discovery order,[4] alleging defendant wrongfully failed to answer his request for production. Plaintiff contended that defendant should have produced written reports and additional communications from defendant's employees. He requested the trial court extend the discovery deadline by 60 days. Defendant next moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), arguing no record evidence demonstrated plaintiff's claim of age discrimination. Even if plaintiff could demonstrate a prima facie case, defendant asserted, his lack of a covering physician was a legitimate reason to not consider his application. Defendant argued plaintiff released it from liability for his antitrust and tortious interference claims.

At the hearing on plaintiff's motion to compel, plaintiff's counsel stated: "The former lead counsel[] . . .is taking a step back for health reasons." The trial court denied plaintiff's motion to compel, stating the motion was untimely and should have been filed within the discovery period or shortly thereafter. The court further opined that reopening discovery would prejudice defendant, since defendant already moved for summary disposition.

On January 21, 2025, the trial court granted defendant summary disposition on plaintiff's age discrimination claim. The court determined there was no question of fact plaintiff was not qualified for clinical privileges because he did not provide a covering physician agreement. Because plaintiff did not show defendant's consideration of his application was malicious or in bad faith, the trial court further ruled that plaintiff's release of liability barred his antitrust and tortious interference claims. The court additionally stated that even if the claims were not barred, plaintiff presented no evidence of a conspiracy to restrain trade or of an improper motive to not

---

[3] Plaintiff requested $3 million in damages for "loss of revenue for the past 3-5 years, loss of professional status and reputation, the reduction of the value of his medical practice, [and] severe stress . . . ." The trial court declined to consider the extent of plaintiff's claimed damages, because it granted defendant summary disposition on the merits of plaintiff's claims.

[4] Plaintiff did not specify which discovery order he was referencing.

consider his application. The trial court ultimately granted defendant summary disposition on all claims. Plaintiff now appeals.

## II. DISCOVERY EXTENSION

Plaintiff argues the trial court erroneously denied his motion to extend discovery and compel defendant to respond to certain discovery requests. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision regarding a motion to extend discovery. *Decker v Trux R US, Inc*, 307 Mich App 472, 478; 861 NW2d 59 (2014) (citation omitted). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Id*. (citation omitted). This Court reviews questions of law, including the interpretation of court rules, de novo. *Sanders v McLaren-Macomb*, 323 Mich App 254, 265; 916 NW2d 305 (2018) (citation omitted).

### B. DISCUSSION

The trial court did not abuse its discretion by denying plaintiff's motion to extend discovery, because the motion was untimely under the circumstances and extending discovery would have prejudiced defendant.

A trial court is authorized to set a time limit for the completion of discovery. MCR 2.301(B)(1), MCR 2.401(B)(2)(a)(v). The trial court in this matter ordered the parties to complete discovery by May 1, 2024. After plaintiff requested production of documents on April 12, 2024 and defendant responded on July 5, 2024, plaintiff moved to extend discovery by 60 days and compel compliance with a purported discovery order.[5] Plaintiff claimed defendant did not adequately respond to the request for production and produce all relevant documents.

First, the trial court denied plaintiff's motion because it was not filed within the discovery period or shortly after that period. MCR 2.301(B)(4) states: "As may be reasonable under the circumstances, or by leave of court, motions with regard to discovery may be brought after the date for completion of discovery." The court rule indicates a motion regarding discovery is not untimely merely because it is filed after the discovery cutoff. Rather, the timeliness of the motion depends on reasonableness under the circumstances. This Court has stated that trial courts "should consider whether the granting of discovery will facilitate or hamper the litigation." *Nuriel v Young Women's Christian Ass'n of Metro Detroit*, 186 Mich App 141, 146; 463 NW2d 206 (1990).

---

[5] Plaintiff styled his motion as one to compel compliance with a discovery order but never identified which discovery order defendant allegedly violated. Because plaintiff argues on appeal the trial court erred by denying his request to extend discovery, we address plaintiff's motion below as a motion to extend discovery.

"[T]he timeliness of the request [and] the duration of the litigation" are relevant factors for the trial court to consider. *Id*. (citation omitted).

In this matter, plaintiff waited until less than a month before the close of discovery to submit its first document production request to defendant. For its part, defendant did not produce documents or respond to plaintiff's request for production until July 5, 2024, two months after the discovery cutoff. Plaintiff argues defendant's response was evasive and incomplete, but defendant filed no response and produced no documents at all for two months. Yet plaintiff's counsel waited another month after the response to move to extend discovery. Discovery had been closed for three months when plaintiff filed his motion, and nearly five months when the trial court denied the motion. Stated simply, plaintiff was dilatory in pursuing discovery. Given the significant delay before plaintiff moved to extend discovery, the trial court did not abuse its discretion by ruling the motion was untimely.

The trial court also did not err by ruling defendant would be prejudiced by extending discovery. "[P]ossible prejudice to the parties" is another relevant factor when a trial court considers whether to grant or extend discovery. *Id*. (citation omitted). Defendant already filed a dispositive motion for summary disposition when the trial court ruled on plaintiff's motion to extend discovery. Extending discovery would have required the parties to restart the dispositive phase of litigation. Plaintiff claims good cause nonetheless existed to extend discovery because his former lead counsel had health issues. Plaintiff never raised any health issues which would justify extending discovery in his motion. The only reference in the record is the statement of plaintiff's counsel that the former lead counsel was "taking a step back" from this matter. However, the former lead counsel remained as a counsel of record until the end of the trial court proceeding. Further, plaintiff never explained the existence of certain documents he requested, including purported reports from Shah and the Credentialing Committee. Plaintiff also never demonstrated Shah and the Credentialing Committee considered his application on the merits. Accordingly, the trial court did not abuse its discretion by declining to extend discovery, because defendant had moved for summary disposition and would be prejudiced if discovery was reopened.

## III. SUMMARY DISPOSITION

Plaintiff argues that the trial court erroneously granted defendant summary disposition, because genuine issues of material fact remained for plaintiff's age discrimination, antitrust, and tortious interference claims, and the latter two claims were not barred by a release of liability. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's grant of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendant's motion for summary disposition was brought under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint. *Id*. at 120. "All well-pleaded allegations are viewed in the light most favorable to the nonmoving party unless documentary evidence is provided that contradicts them." *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 309; 901 NW2d 577 (2017). If the movant meets the initial burden of supporting its position by documentary evidence, the burden shifts to the

nonmovant to establish a genuine issue of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (citation omitted).

"Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120 (citations omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted). "A court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted; emphasis omitted).

## B. DISCUSSION

The trial court did not err by granting defendant summary disposition on plaintiff's age discrimination, antitrust, and tortious interference claims.

Plaintiff filed a claim for age discrimination under the Elliott-Larsen Civil Rights Act. Pursuant to MCL 37.2202(1)(a), "[a]n employer shall not . . .[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . .age . . . ." This Court applies the United States Supreme Court's prima facie test to evaluate age discrimination claims. *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997), citing *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). To establish a prima facie claim, the plaintiff must show they were "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and . . .(4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town*, 455 Mich at 695. If the defendant demonstrates "a nondiscriminatory reason for the discharge, . . .the presumption of discrimination evaporates." *Id*. (footnote omitted). The plaintiff must then show "the employer's nondiscriminatory reason was not the true reason for the discharge and . . .the plaintiff's age was a motivating factor in the employer's decision." *Id*. at 697 (footnote omitted).

Plaintiff's claim fails at the first step, because he has not shown he was qualified for clinical privileges. Defendant required a covering physician agreement before plaintiff's application would be processed and considered on the merits. V. Patel initially agreed to serve as plaintiff's covering physician in November 2022, but then stated he could not serve as the covering physician in March 2023.[6] Plaintiff does not dispute that proof of a covering physician was necessary to grant clinical privileges, nor could he, since his application clearly listed that requirement. Plaintiff instead claims his application for clinical privileges was complete. Hester e-mailed plaintiff in February 2023, stating the "initial verification process" for plaintiff's application "has been completed." However, this e-mail was sent before V. Patel declined to serve as plaintiff's covering physician. There was no evidence plaintiff obtained another covering physician agreement. Radomski, Shah, and Ahmed all averred plaintiff's application was incomplete and could not be

---

[6] Plaintiff claimed Jain coerced V. Patel into withdrawing but offered no evidence for this claim.

considered on the merits. Because plaintiff presented no evidence showing he was qualified for clinical privileges, the trial court did not err by dismissing his age discrimination claim.

Even if plaintiff met his prima facie burden, his lack of a covering physician was a nondiscriminatory reason to not grant him clinical privileges. Plaintiff did not demonstrate a triable issue of fact whether that nondiscriminatory reason was a pretext for age discrimination. To argue plaintiff's age motivated defendant's decision, plaintiff relies on Shah's and Jain's statements, questioning why plaintiff would want to continue practicing and noting his advanced age. Regardless of the statements' meanings, Shah and Jain made them in 2018 and 2020, not during plaintiff's application for clinical privileges in 2022 and 2023. One relevant factor in determining whether an employer's statement was a "stray remark[]" or direct evidence of discrimination is whether the statement was "related to the decision-making process." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 135-136; 666 NW2d 186 (2003) (quotation marks and citations omitted). Jain averred he was not involved in that application. Shah averred he never reviewed plaintiff's application on the merits because it was incomplete. Plaintiff never presented evidence Shah and Jain were involved in considering his application, or their alleged concerns about his age were a motivating factor in defendant's decision. Thus, the trial court did not err by granting defendant summary disposition on plaintiff's age discrimination claim.

The trial court barred plaintiff's antitrust and tortious interference claims because plaintiff expressly waived defendant's liability for those claims. In his application, plaintiff agreed to release defendant's subsidiaries, including Beaumont Health, from liability for "acts performed in good faith and without malice" with his application. Plaintiff argues the release does not apply in this matter because it did not specifically list defendant. "The validity of a release turns on the intent of the parties." *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 10; 988 NW2d 800 (2022) (quotation marks and citation omitted). "If the text of the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release . . . ." *Id*. (quotation marks and citation omitted). Plaintiff sued defendant in its capacity as "doing business as Beaumont Health Wayne." Plaintiff submitted his application for clinical privileges to Beaumont Wayne, which defendant owns and operates. Plaintiff does not dispute that he applied for clinical privileges at a Beaumont facility owned and operated by defendant. In light of the foregoing, the trial court did not err by applying the release of liability in this matter.

Although the release of liability is applicable, it only waived liability for defendant's acts performed in good faith and without malice. The trial court properly dismissed plaintiff's antitrust and tortious interference claims, because defendant did not perform any malicious acts in bad faith relevant to either claim. First, plaintiff brought his antitrust claim under MCL 445.772, which prohibits "[a] contract, combination, or conspiracy between 2 or more persons in restraint of[] . . .trade or commerce in a relevant market . . . ." Plaintiff claimed defendant's employees conspired to restrain his ability to practice medicine. This claim, regardless of the evidence or absence of evidence for the claim, lacks merit, because plaintiff did not allege a conspiracy "between 2 or more persons . . . ." MCL 445.772. "[A] corporation generally cannot conspire with its board of directors, officers, or employees, because a corporation acts only through those persons and conspiring with those persons would be like conspiring with itself." *Blair v Checker Cab Co*, 219 Mich App 667, 675; 558 NW2d 439 (1996) (citations omitted). Plaintiff argues defendant's employees unilaterally conspired with themselves. "A unilateral action, no matter how

anticompetitive it may be, does not amount to a combination to restrain trade." *Desgranges Psychiatric Ctr, PC v Blue Cross & Blue Shield of Mich*, 124 Mich App 237, 244; 333 NW2d 562 (1983) (citations omitted). Because plaintiff never alleged any legally relevant action by defendant, let alone a malicious action in bad faith, the trial court properly barred his antitrust claim.

Second, the trial court did not err by dismissing plaintiff's tortious interference claim, because defendant never intentionally interfered with plaintiff's business expectancy or relationships. The elements of tortious interference in this matter are: "the existence of a valid business . . .expectancy, knowledge of the . . .expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the . . .expectancy, and resultant damage to the plaintiff." *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 323; 788 NW2d 679 (2010) (citation omitted). The third element of intentional interference is not satisfied if the defendant "was motivated by legitimate business reasons." *Puetz v Spectrum Health Hosps & Kevin Splaine*, 324 Mich App 51, 78; 919 NW2d 439 (2018) (quotation marks and citation omitted). The plaintiff must demonstrate "affirmative acts by the defendant that corroborate the improper motive of the interference." *Dalley*, 287 Mich App at 324 (quotation marks and citation omitted). As stated, plaintiff's lack of a covering physician was a legitimate business reason not to consider his application. Plaintiff's application clearly required a covering physician before defendant would consider it on the merits. Plaintiff claims defendant intentionally did not inform him that his application was incomplete. However, Hester and Powell continually told plaintiff what missing information he needed to submit. In any event, plaintiff does not argue defendant's alleged failure to inform was connected to any improper motive. Therefore, the trial court did not err by barring plaintiff's tortious interference claim, because plaintiff never showed defendant had an improper motive or intentionally interfered with a business expectancy.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Brock A. Swartzle
/s/ Adrienne N. Young